PANKOPF, Respondent, vs. HINKLEY, Appellant.

*November 17—December 7, 1909.*

*Negligence: Proximate cause of injury: Fright or shock.*

1. When physical injury flows directly from extreme fright or shock, caused by the ordinary negligence of one who owes the duty of care to the injured person, such fright or shock is a link in the chain of proximate causation as efficient as physical impact from which like results flow.

[2. Whether, in a complaint alleging that through defendant's negligence plaintiff received "a severe fright and shock" and that a miscarriage resulted therefrom, the word "shock" is used to mean a physical or a mental disturbance, or as meaning a condition partaking of both, not determined.]

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge.   *Affirmed.*

*Edgar L. Wood,* for the appellant.

For the respondent there was a brief by *Julius E. Kiefer,* attorney, and *Gross & Saltzstein,* of counsel, and oral argument by *E. J. Gross.*

WINSLOW, C. J.    This is an action for personal injuries
resulting from negligence.    A general demurrer to the com-
plaint having been overruled, the defendant appeals.    The
complaint in brief charges that, while the plaintiff was riding
in a hired carriage upon a country highway with several other
people, an automobile driven by the defendant came up behind
the carriage, and the driver of the carriage turned out to the
extreme right side of the road and stopped in order that the
automobile might pass by; that, although there was ample
room to pass, the defendant, in attempting to pass, negligently
and carelessly steered the automobile directly into the horses
attached to the carriage, with such force that the horses were
thrown or pushed off from the road, pulling the carriage with
them with such force and violence that the plaintiff and the
other occupants of the carriage received "a severe fright and
shock; that due to such fright and shock, as aforesaid caused
by the negligence of the defendant, the said plaintiff suffered
injury to her body; that at the time she was pregnant, and
as a result of said fright and shock there resulted a miscar-
riage," causing severe pain and suffering, and resulting in
permanent injury to her health.

It is plain from the language of the complaint that this is
an action to recover damages for physical injuries, namely,
the miscarriage and its subsequent consequences, and is not
an action to recover damages for mere mental anguish, which
is not preceded by or accompanied with some physical injury.
Hence the doctrine that there can be no recovery in this latter
class of cases, first announced in *Summerfield v. W. U. Tel.
Co.* 87 Wis. 1, 57 N. W. 973, and affirmed in *Gatzow v. Buen-
ing,* 106 Wis. 1, 20, 81 N. W. 1003, and subsequent cases, is
not at all involved nor affected by anything which may be said
in this case.

The word "shock" has a number of meanings.    It may
mean the collision or concussion of two physical bodies strik-
ing together, or it may mean simply a surprised or disgusted
state of the emotions which momentarily disappears.    In the

present case perhaps it might properly be construed as mean-
ing a physical jolt given to the person of the plaintiff as the
carriage was suddenly pulled or pushed off from the highway.
From the allegations of the complaint it seems well-nigh cer-
tain that there must have been some jolt of this kind.   How-
ever, it seems evident to us that the pleader did not use the
term as meaning external violence or physical inconvenience,
but rather in its pathological sense, meaning an abnormal
condition, either of mind or of body, or of both mind and
body, resulting from the imminent apparent danger of injury
or death, which suddenly flashed upon the vision of the plaint-
iff.   The Century Dictionary defines "shock" used patho-
logically as follows:

"A condition of profound prostration of voluntary and in-
voluntary functions, of acute onset, caused by trauma, surgi-
cal operation, or excessive sudden emotional disturbance
(mental shock)."

Whether a condition of profound prostration of both volun-
tary and involuntary functions of the body be not as truly a
physical injury when produced by violent emotional disturb-
ance as when produced by bodily violence would perhaps be
an interesting question, but we do not find it necessary to con-
sider it.

It is charged that the shock was directly caused by the de-
fendant's negligent act, and that the miscarriage was directly
caused by the shock.   Now, if the shock can legally operate as
the connecting link between the defendant's negligent act and
the plaintiff's miscarriage, so that the negligence was truly
the cause which operated first and set in motion the train of
events which ended in the miscarriage as the natural and
probable result, then it does not become necessary to decide
whether "shock" as here used is a physical or mental disturb-
ance, or whether, as seems more reasonable, it partakes of
both.   This court in a number of cases seems to have settled
this question in the affirmative, though without extended dis-
cussion of this phase of the question.   These cases are *Oliver*

*v. La Valle,* 36 Wis. 592; *Stutz v. C. & N. W. R. Co.* 73 Wis. 147, 40 N. W. 653; *McKeon v. C., M. & St. P. R. Co.* 94 Wis. 477, 69 N. W. 175; *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271. In none of these cases did the negligent act of the defendant, which was relied on as the proximate cause of the subsequent physical injuries, consist of a physical violence or hostile contact, but only consisted of a negligent or wrongful act which produced extreme fright or shock, from which extreme fright or shock physical injuries naturally resulted; but in all of the cases the chain of causation was held to be complete in case the jury found that the defendant should have anticipated that an injury to another might follow as the natural and probable result of his negligent act. It is true that there is a conflict in the authorities upon this question, but we think the better reason supports the rule which this court has consistently followed. *Purcell v. St. Paul City R. Co.* 48 Minn. 134, 50 N. W. 1034; *Sanderson v. N. P. R. Co.* 88 Minn. 162, 92 N. W. 542; *Gulf, C. & S. F. R. Co. v. Hayter,* 93 Tex. 239, 54 S. W. 944; *Sloane v. S. C. R. Co.* 111 Cal. 668, 44 Pac. 320; *Mack v. S. B. R. Co.* 52 S. C. 323, 29 S. E. 905; *Bell v. G. N. R. Co.* 26 L. R. (Ir.) 428; *Dulieu v. White,* [1901] 2 K. B. 669; *Fitzpatrick v. G. W. R. Co.* 12 U. C. Q. B. 645. *Contra: Victorian Railways Comm'rs v. Coultas,* L. R. 13 App. Cas. 222; *Mitchell v. Rochester R. Co.* 151 N. Y. 107, 45 N. E. 354; *Ewing v. P., C. & St. L. R. Co.* 147 Pa. St. 40, 23 Atl. 340; *Spade v. L. & B. R. Co.* 168 Mass. 285, 47 N. E. 88. An exhaustive and learned article on the subject which reviews the authorities may be found in 41 Am. Law Reg. N. s. 141.

The principle here decided is that when physical injury flows directly from extreme fright or shock, caused by the ordinary negligence of one who owes the duty of care to the injured person, such fright or shock is a link in the chain of proximate causation as efficient as physical impact from which like results flow.

*By the Court.*—Order affirmed.