Floyd E. Bowen, Special Administrator of the Estate of Steven W. Bowen, Floyd E. Bowen and Sharon A. Bowen, Plaintiffs-Appellants-Petitioners,

v.

Lumbermens Mutual Casualty Company, a foreign insurance corporation and Elroy J. Rautmann, Defendants-Respondents,

Champus/Champva, a federal governmental insurance corporation, Defendant.

Supreme Court

*No. 92–1728. Oral argument January 11, 1994.—Decided May 25, 1994.*

(Also reported in 517 N.W.2d 432.)

628

629

630

For the plaintiffs-appellants-petitioners there were briefs by *Timothy J. Aiken, Kelly Centofanti* and *Aiken & Scoptur, S.C.,* Milwaukee and *Rick Winter,* Manitowoc and oral argument by *Timothy J. Aiken.*

For the defendants-respondents there was a brief by *William J. Katt, Christine M. Benson* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee and oral argument by *William J. Katt.*

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed March 17, 1993, affirming a judgment of the circuit court for Sheboygan county, John B. Murphy, circuit judge. The circuit court dismissed two claims: (1) Sharon Bowen's claim for negligent infliction of severe emotional distress arising from her viewing the immediate aftermath of her son's fatal injury, allegedly caused by defendant Elroy J. Rautmann's negligence, and (2) the claim of Steven Bowen's estate for negligent infliction of emotional distress on Steven Bowen arising from his emotional trauma immediately preceding the fatal collision between his bicycle and Elroy Rautmann's vehicle. The court of appeals affirmed the dismissal, concluding that neither claim is recognized under Wisconsin law. We reverse that part of the decision of the court of appeals dismissing Sharon Bowen's claim and affirm that part dismissing the estate's claim.

Both claims require us to reexamine the tort of negligent infliction of emotional distress. Myriad circumstances may give rise to claims for negligent infliction of emotional distress. Sharon Bowen's claim is one kind of claim that may arise. Her claim compels us to focus on the liability to a "bystander" of a

631

tortfeasor who negligently and seriously injures or kills another. We use the word "bystander" as a shorthand reference to a plaintiff who alleges emotional distress arising from a tortfeasor's negligent infliction of physical harm on a third person.

The estate's claim is an example of another kind of claim for negligent infliction of emotional distress. The claim of the estate of Steven Bowen compels us to focus on the liability of a negligent tortfeasor for pre-impact emotional distress when the victim dies without regaining consciousness.

We conclude that a plaintiff claiming negligent infliction of emotional distress, regardless of the fact situation in which the claim arises, must prove the following elements: (1) that the defendant's conduct fell below the applicable standard of care, (2) that the plaintiff suffered an injury, and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury. The factfinder determines cause-in-fact. The court determines whether considerations of public policy relieve the defendant of liability in a particular case. These public policy considerations are an aspect of legal cause, not cause-in-fact.

We further conclude, borrowing concepts from the tort of intentional infliction of emotional distress, that in a cause of action for negligent infliction of emotional distress the injury a plaintiff must prove is severe emotional distress; but the plaintiff need not prove physical manifestation of that distress. *Alsteen v. Gehl,* 21 Wis. 2d 349, 124 N.W.2d 312 (1963).

In examining Sharon Bowen's claim as a bystander, we abandon the zone of danger and fear for one's safety rules this court has applied in earlier bystander cases. We conclude that a bystander's claim for negligent infliction of emotional distress, like other

claims for negligent infliction of emotional distress, are governed by the traditional rules applicable to negligence actions. Applying these rules we conclude that Sharon Bowen has alleged the elements of a cause of action for negligent infliction of emotional distress. We now turn to considerations of public policy. As we explain more fully later, three factors are critical to the determination of legal cause in the bystander fact situation. First, the injury suffered by the victim must have been fatal or severe. Second, the victim and the plaintiff must be related as spouses, parent-child, grandparent-grandchild or siblings. Third, the plaintiff must have observed an extraordinary event, namely the incident and injury or the scene soon after the incident with the injured victim at the scene. Applying these factors in this case to determine whether public policy considerations preclude liability, we conclude that Sharon Bowen's claim is not barred by public policy considerations. Accordingly, we reverse that part of the decision of the court of appeals dismissing Sharon Bowen's claim and remand that cause to the circuit court for further proceedings not inconsistent with this opinion.

Our analysis of the claim of the estate leads us to conclude that, although the estate has set forth the elements of the tort of negligent infliction of emotional distress, the claim may not proceed on grounds of public policy. The claim is too speculative and would be too likely to open the way for fraudulent claims. Accordingly, we affirm that part of the decision of the court of appeals affirming the dismissal of the claim of the estate of Steven Bowen.

We first state the facts and then discuss each of the claims.

## I.

The record in this case consists of the complaint, amended complaint, answers, and medical reports.[1] For purposes of deciding the questions of law presented, the following facts are accepted as undisputed.

According to the complaint, on October 12, 1990, at about 6:30 p.m., a vehicle driven by Elroy J. Rautmann, insured by Lumbermens Mutual Casualty Insurance Co., negligently collided with 14-year-old Steven Bowen who was riding his bicycle. Steven Bowen was fatally injured; he died in a hospital soon after the accident. The parties apparently concede that Steven Bowen never regained consciousness between the time of the accident and his death. Two claims for damages are at issue in this proceedings.[2]

First, Sharon Bowen, Steven Bowen's mother, seeks damages for negligent infliction of emotional distress. According to the amended complaint, Sharon Bowen did not witness the collision itself; she arrived at the scene a few minutes after the collision occurred and personally witnessed its violent and gruesome aftermath. She saw her severely injured son trapped

---

[1] Lumbermens Mutual Insurance Co. filed a brief but did not file affidavits in support of its motion of dismissal. It argued that on the basis of the facts set forth in the complaint the claims for negligent infliction of emotional distress could not be maintained as a matter of law. The circuit court refused to consider the plaintiffs' trial brief and supporting affidavits because they were not timely filed under local court rules.

[2] The complaint also seeks damages for Steven Bowen's wrongful death, for the parents' loss of society and companionship, and for pecuniary injury, medical expenses, property damage and funeral expenses. These portions of the complaint are not in issue on this review.

634

beneath the defendant's car. She watched the prolonged rescue attempt. The complaint asserts that these experiences caused Sharon Bowen extreme emotional and psychic injuries with accompanying physical symptoms including hysteria, insomnia, nausea and the disruption of work and family relationships.

Second, the estate of Steven Bowen apparently seeks damages for negligent infliction of emotional distress on Steven Bowen immediately prior to the collision. The estate asks us to interpret the complaint liberally and infer that Steven Bowen was aware of the imminent collision and experienced fear and anguish prior to the impact.

Asserting that Sharon Bowen and the estate fail to state claims upon which relief can be granted, Elroy Rautmann and his insurer filed a motion for partial summary judgment. The circuit court dismissed these claims on the merits. The court of appeals granted Sharon Bowen leave to appeal the non-final judgment dismissing her claim for negligent infliction of emotional distress. The estate appealed as of right the final judgment dismissing its claim.

The same questions of law are presented to this court as were presented to the circuit court and the court of appeals. We review the complaint in the same manner as the circuit court and the court of appeals, benefitting from their analyses and opinions. Pleadings are to be liberally construed, and a claim will be dismissed only if "it is quite clear that under no conditions can the plaintiff recover." *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979). The complaint must be viewed most favorably to the plaintiff. Accepting the allega-

tions as true, we must decide whether a plaintiff has stated a claim upon which relief may be granted.

## II.

Sharon Bowen's claim requires us to reexamine the case law governing the tort of negligent infliction of emotional distress. Specifically, we focus on the liability to a bystander of a tortfeasor who negligently and seriously injures another.

The essence of Sharon Bowen's argument in support of her claim for negligent infliction of emotional distress is that the court should abandon the so called "zone of danger" rule it adopted in 1935 in *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935). In contrast, Elroy Rautmann and his insurer urge the court to adhere to the *Waube* line of cases and hold that only a bystander who is in the zone of danger, who fears for his or her own physical safety, and who witnesses the serious injury or death of a close relative, may recover damages from a negligent tortfeasor for the emotional distress leading to physical injuries.

The parties agree that Sharon Bowen was not in the zone of physical danger, that she did not fear for her own personal safety, and that she did not witness the defendant's vehicle hitting her son. We conclude that this court effectively abandoned the zone of danger rule in *Garrett v. City of New Berlin,* 122 Wis. 2d 223, 362 N.W.2d 137 (1985), and today we formally forsake it.[3]

---

[3] There is extensive law review commentary on the tort of negligent infliction of emotional distress and the case law. *See, e.g.,* the articles cited at W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, Prosser and Keeton on the Law of Torts, sec. 54 at p. 360, n.10 (5th ed. 1984 and supplement 1988).

## A.

The tort of negligent infliction of emotional distress has troubled this court and other courts for many years. Our decision today demands an appraisal of the evolution of our cases on negligent infliction of emotional distress, especially those arising over the almost 60 years since our discussion of a bystander's claim in *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935).[4]

For more recent commentary, *see, e.g.,* Michael K. Steenson, *The Anatomy of Emotional Distress Claims in Minnesota,* 19 Wm. Mitch. L. Rev. 1 (1993); Scott D. Marrs, *Mind Over Body: Trends Regarding the Physical Injury Requirement in Negligent Infliction of Emotional Distress and "Fear of Disease" Cases,* 28 Tort & Ins. L.J. 1 (1992); Paul V. Calandrella, *Safe Haven for a Troubled Tort: A Return to the Zone of Danger for the Negligent Infliction of Emotional Distress,* 26 Suffolk U. L. Rev. 79 (1992); Julie A. Greenberg, *Negligent Infliction of Emotional Distress: A Proposal for a Consistent Theory of Tort Recovery for Bystanders and Direct Victims,* 19 Pepperdine L. Rev. 1283 (1992); Michael Phillips, *Drawing the Line: Missouri Adopts the Zone of Danger Rule for Bystander Emotional Distress,* 56 Mo. L. Rev. 1183 (1991); George W. VanDeWeghe, Jr., *California Continues to Struggle with Bystander Claims for the Negligent Infliction of Emotional Distress: Thing v. La Chusa,* 24 Loyola (L.A.) L. Rev. 89 (1990); Thomas J. Lo, *Thing v. La Chusa—Public Policy Demands a Limitation on the Bystander Recovery for Infliction of Emotional Distress,* 17 Western St. U. L. Rev. 499 (1990); Michele A. Scott, *Proving Beyond A Reasonable Doubt: The Negligent Infliction of Emotional Distress,* 11 Cardozo L. Rev. 235 (1989).

[4] For discussions of the tort of negligent infliction of emotional distress in Wisconsin, *see, e.g.,* Stuart B. Eiche, *The Common Law Treatment in Wisconsin of the Right to Recover for Emotional Harm,* 1977 Wis. L. Rev. 1089; John E. Flanagan, *Negligent Infliction of Emotional Distress: A Proposal for a Rec-*

Historically this court and other courts have been reluctant to compensate plaintiffs for emotional suffering. While courts are willing to compensate for emotional harm incident to physical injury in a traditional tort action, they have been loath to recognize the right to recover for emotional harm alone. The common law historically distrusted emotion.[5] Emotional suffering was deemed genuine and compensable only if it was associated with a provable physical injury claim in an accepted tort cause of action.[6]

The disparate treatment by courts of the torts of intentional infliction of emotional distress and negligent infliction of emotional distress illustrates this concern with authenticating claims of emotional distress. Wisconsin recognizes a claim for intentional

---

*ognized Tort Action,* 67 Marq. L. Rev. 557 (1984); John A. Goldstein, *The Impact of Garrett v. City of New Berlin on Wisconsin's Approach to Negligent Infliction of Emotional Distress and a Recommendation for Fundamental Doctrinal Change,* 75 Marq. L. Rev. 467 (1992).

The commentary has been critical of our cases and has urged the court to abandon arbitrary standards and apply the traditional negligence approach to the tort.

[5] The tort of intentional infliction of emotional distress was not recognized in Wisconsin until 1963. *Alsteen v. Gehl,* 21 Wis. 2d 349, 124 N.W.2d 312 (1963). A wife was not permitted to sue for the loss of consortium of her husband until 1967. *Moran v. Quality Aluminum Casting Co.,* 34 Wis. 2d 542, 150 N.W.2d 137 (1967). Loss of society and companionship claims involving parents and minor children were not recognized until 1974. *Shockley v. Prier,* 66 Wis. 2d 394, 225 N.W.2d 495 (1975).

[6] *See, e.g., Rennick v. Fruehauf Corp.,* 82 Wis. 2d 793, 804–05, 264 N.W.2d 264 (1978); *Redepenning v. Dore,* 56 Wis. 2d 129, 143, 201 N.W.2d 580 (1972); *Vinicky v. Midland Casualty Ins. Co.,* 35 Wis. 2d 246, 253, 151 N.W.2d 77 (1967).

infliction of emotional distress. *Alsteen v. Gehl,* 21 Wis. 2d 349, 124 N.W.2d 312 (1963). As this court noted in *Alsteen,* evidentiary problems of proof were at the root of the common law's hesitance to compensate emotional harm in the absence of physical injury. *Alsteen,* 21 Wis. 2d at 358. The elements of the tort of intentional infliction of emotional distress set forth in *Alsteen* were devised in part to guarantee the authenticity of the plaintiff's claim. To recover, the plaintiff would have to prove that the defendant intended to cause emotional distress and did cause severe emotional distress. Perhaps more important, the plaintiff would have to prove that the defendant's conduct would be judged extreme or outrageous by an "average member of the community." *Alsteen,* 21 Wis. 2d at 359. "If the conduct is gross and extreme it is more probable that the plaintiff did, in fact, suffer the emotional distress alleged." *Alsteen,* 21 Wis. 2d at 360.

On the other hand, courts have struggled with the tort of negligent infliction of emotional distress, concerned that the negligent conduct did not adequately assure the authenticity of the plaintiff's claim of severe emotional harm. Courts have historically been apprehensive that psychological injuries would be easy to feign and that suits would be brought for trivial emotional distress more dependent on the peculiar emotional sensitivities of the plaintiff than upon the nature of the tortfeasor's conduct. People should not, courts reasoned, be able to sue for everyday minor disturbances. Furthermore courts feared that opening the courts to claims for negligent infliction of emotional distress would open the floodgates of litigation and lead to unlimited liability for a negligent tortfeasor.

Nevertheless courts have acknowledged that justice requires recognition of some claims for negligently

inflicted emotional harm. Courts have devised various criteria to balance a plaintiff's compensatory interests for emotional distress with the interests of the judicial system in authenticating claims and preventing unlimited liability for the tortfeasor.

For example, some state courts adopted the "impact rule" under which plaintiffs could recover for negligent infliction of emotional distress only when they had suffered a contemporaneous physical injury or physical impact on their person. The impact rule was viewed as a bright line. However, fact situations inevitably arose that did not satisfy the requirements of the impact rule even though justice seemed to call for compensation. In those fact situations, some courts stretched the concepts of physical injury and physical impact. Where courts were less inventive, the rule proved unsatisfactory because it barred plaintiffs from recovering even when they could establish a causal link between the defendant's negligence and the plaintiff's emotional injury.[7] Wisconsin repudiated the impact rule.[8]

---

[7] For cases from other jurisdictions, *see* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, Prosser and Keeton on the Law of Torts, sec. 54 at pp. 363–64 (5th ed. 1984).

[8] For a discussion of the early Wisconsin case law on impact, *see, e.g., Pankropf v. Hinley,* 141 Wis. 146, 123 N.W. 625 (1909), in which a horse-drawn carriage left the road because of the negligence of the defendant automobile driver. The plaintiff passenger was severely frightened and suffered a miscarriage. The court held for the plaintiff, concluding that the defendant's negligence set in motion the chain of events that ended in miscarriage. The court concluded that in prior Wisconsin cases "the negligent act of the defendant, which was relied on as the proximate cause of the subsequent physical injuries [did not] consist of physical violence or hostile contact, but only consisted of a negligent or wrongful act which produced extreme fright or

Dissatisfaction with the impact rule led to its rejection in favor of the zone of danger rule.[9] The zone of danger rule is based on tort law's familiar concepts of duty and foreseeability. If the injury resulting from a careless act can not reasonably be foreseen by the actor, there is no legal liability because the actor has

---

shock, from which extreme fright or shock physical injuries naturally resulted."

For more recent cases concluding that physical impact is not needed in Wisconsin for negligent infliction of emotional distress, *see, e.g., Waube v. Warrington,* 216 Wis. 603, 606–08, 258 N.W. 497 (1935) ("[requiring actual impact for a plaintiff to recover for nervous shock caused by negligence] was repudiated in a number of jurisdictions, including Wisconsin, in situations where fright without impact produced physical injuries."); *Colla v. Mandella,* 1 Wis. 2d 594, 597, 85 N.W.2d 345 (1957) ("recovery is not defeated here by the fact that there was no direct physical impact of the [defendant's] truck on [the plaintiff's] person. The courts are getting away from the requirement of physical impact to sustain liability in fright and shock cases, and the majority no longer require impact, while those courts which retain the impact requirement go very far in finding sufficient impact from the most trivial contact."); *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 225, 177 N.W.2d 83 (1970) ("this jurisdiction has abandoned the requirement of physical impact . . ..").

[9] Apparently as of 1987 the majority of jurisdictions that have considered negligent infliction of emotional distress on a bystander have adopted the zone of danger approach. *Gillman v. Burlington Northern R. Co.,* 673 F. Supp. 913, 917, n.1 (N.D. Ill. 1987).

But several jurisdictions have abandoned the zone of danger rule. *See* 4 Stuart M. Speiser, Charles F. Krause, Alfred W. Gans, The American Law of Torts secs 16:25–16:26, pp. 1119–1126; W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, Prosser and Keeton on the Law of Torts, sec. 54 at p. 366 (5th ed. 1984).

641

breached no duty to the injured person; the injured person is simply outside the zone of foreseeable risk.

The Wisconsin court adopted the zone of danger rule for limiting liability for negligent infliction of emotional distress in *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935), a bystander case.[10] *Waube* represented this court's first attempt to grapple with two major, interrelated problems in the tort of negligent infliction of emotional distress: authenticating the plaintiff's claim and avoiding unlimited liability for the tortfeasor.

In *Waube* the Wisconsin Supreme Court concluded that physical harm to (or physical impact with) the plaintiff was not required but that the plaintiff's proximity to the tortious conduct could serve to authenticate the plaintiff's claim of emotional distress. Plaintiffs could recover for emotional distress if they were in danger of physical impact, that is, if they were within the zone of danger. The *Waube* court, however, denied recovery to a mother who watched from a window as her child crossed a highway and saw her child negligently killed by a vehicle. Even though Mrs.

---

[10] The zone of danger rule is set forth in 2 Restatement (Second) of Torts sec. 313 (2) (1965).

The first Restatement of Torts sec. 313, p. 851 (1934) specifically proposed no rule regarding recovery for emotional distress and resulting physical injury to a parent or spouse who witnessed the injury-causing negligent act. The section provided in part: "*Caveat:* The Institute expresses no opinion as to whether an actor whose conduct is negligent as involving an unreasonable risk of causing bodily harm to a child or spouse is liable for an illness or other bodily harm caused to the parent or spouse who witnesses the peril or harm of the child or spouse and thereby suffers anxiety or shock which is the legal cause of the parent's or spouse's illness or other bodily harm."

Waube "became extremely hysterical, sick and pros-
trated through fright, shock and excessive sudden
emotional disturbances which caused her immediately
to take to her bed" (and subsequently to die), 216 Wis.
at 603–04, she was unable to recover. Her emotional
distress was caused only by fear for the safety of
another person; she had been outside the zone of
danger.[11]

The *Waube* court derived this notion of the zone of
danger from Judge Benjamin Cardozo's opinion in *Pal-
sgraf v. Long Island Railroad,* 248 N.Y. 339, 162 N.E.
99 (1928). This analytical approach focused on the
"foreseeability" of the harm and the duty owed by a
defendant to specific plaintiffs. According to the *Waube*
court, the tortfeasor's "duty was to use ordinary care to
avoid physical injury to those who would be put in
physical peril." *Waube v. Warrington,* 216 Wis. at 612.

Since *Waube,* subsequent decisions have limited,
refined and undermined the zone of danger rule, but
until today a majority of the court has not expressly
abandoned it.

The *Waube* zone of danger rule was recharacter-
ized but ultimately affirmed in *Klassa v. Milwaukee
Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956). In
*Klassa* the defendant's employees negligently caused a
minor explosion in the basement of the Klassa home.
273 Wis. at 180. At the time of the explosion the Klassa
children were in the basement; Mrs. Klassa was in the
basement laundry room and ran into the backyard. Her
sister was upstairs and also went outdoors. Mrs.
Klassa's and her sister's claims were based on injuries

[11] In the *Waube* case, Mr. Waube sought to recover for the
wrongful death of his wife. Mr. Waube could not recover unless
his wife would have been able to maintain an action for her own
injuries had she lived. *Waube,* 216 Wis. at 605.

that were the result of shock and fright about the safety of the children. The defendant asserted that the plaintiffs' shock and fright did not stem from the original explosion but rather from their discovery that the children were in the basement. On these facts, the *Klassa* court narrowed the zone of danger rule, barring recovery unless plaintiffs could prove not only that the tortfeasor's negligence had caused their emotional distress but also that they had feared for their own safety.

The *Klassa* court attempted to harmonize *Waube's* zone of danger rule with the Wisconsin approach to the law of negligence by renouncing *Palsgraf's* concept of duty. Wisconsin law considers conduct to be negligent if it involves a foreseeable risk of harm to anyone. In Wisconsin, the doctrine of public policy, not the doctrine of duty, limits the scope of the defendant's liability.[12] The *Klassa* court concluded that "whenever

---

[12] In *Osborne v. Montgomery,* 203 Wis. 223, 234 N.W. 372 (1931), the court adopted the dissenting opinion of Judge Andrews in *Palsgraf* on the concept of duty and foreseeability: "Every one owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others . . .. Not only is he wronged to whom harm might reasonably be expected to result, but he also who is in fact injured, even if he be outside what would generally be thought to be the danger zone . . .." *Palsgraf,* 248 N.Y. at 350. The *Osborne* court made clear that limiting liability on the basis of foreseeability was a question of law for the court, stating: "Any rule which operates to limit liability for a wrongful act must be derived from judicial policy and its limits cannot be defined by any formula capable of automatic application but must rest in the sound discretion of the court." 203 Wis. at 237.

In *Schilling v. Stockel,* 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965), the court traced the rejection of "the no-duty formula of *Palsgraf* and *Waube*" to *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 55 N.W.2d 29 (1952). The *Pfeifer* court

a court holds that a certain act does .not constitute negligence because there was *no duty* owed by the actor to the injured party, although the act complained of caused the injury, such court is making a policy determination." *Klassa,* 273 Wis. at 183 (emphasis in original). Thus, the *Klassa* court re-interpreted *Waube* as grounded upon public policy considerations rather than upon the concepts of foreseeability and duty.[13] *Klassa's* public policy formulation is a more realistic description of how Wisconsin courts decide whether to impose liability upon a negligent tortfeasor than the foreseeability formulation in *Palsgraf* and *Waube.*[14]

Fourteen years later, the Wisconsin supreme court appended another element to the tort of negligent infliction of emotional distress. In *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 227, 177 N.W.2d 83 (1970), the

stated: "[I]n cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability." 262 Wis. at 238.

[13] Although the *Waube* court concluded that the defendant owed no duty to the plaintiff, it also discussed public policy considerations for limiting liability. The *Waube* court stated that liability would be "wholly out of proportion to the culpability of negligent tort-feasor, would put an unreasonable burden upon users of the highway, open the way to fraudulent claims, and enter a field that has no sensible or just stopping point." 273 Wis. at 613.

[14] The Restatement (Second) of Torts, sec. 435(2) (1965), provides for cutting off liability because of "highly extraordinary" harm. Comment *e,* p. 453 recognizes this principle as follows:

"It is impossible to state any definite rules by which it can be determined that a particular result of the actor's negligent conduct is or is not so highly extraordinary as to prevent the conduct from being a legal cause of that result. This is a matter for the judgment of the court formulated after the event, and therefore, with the knowledge of the effect that was produced."

645

court clarified that in a claim for negligent infliction of emotional distress the "emotional distress must be manifested by physical injuries."[15] In contrast, seven years before *Ver Hagen* was decided, the court had concluded that no physical symptoms of emotional distress were required for recovery for intentional infliction of emotional distress. *Alsteen v. Gehl,* 21 Wis. 2d 349, 124 N.W.2d 312 (1963).

The *Alsteen* court had concluded that courts "now possess[ed] the tools whereby [they could] intelligently evaluate claims of emotional injury . . .." *Alsteen* 21 Wis. 2d at 359. Nevertheless, over the vociferous dissent of three justices, the *Ver Hagen* court insisted that a plaintiff who alleged negligent, as opposed to intentional, infliction of emotional distress would have to demonstrate physical manifestations of the emotional distress. Unlike intentional infliction of emotional distress, where the defendant's outrageous conduct itself could serve to authenticate the plaintiff's emotional distress, the court concluded that negligently inflicted emotional distress could only be authenticated by the existence of physical symptoms.

The three dissenting justices in *Ver Hagen* argued, however, that the court was drawing untenable distinctions between intentional and negligent actions. "There is no longer any reason in logic or in fact to distinguish between intentional or negligent infliction of emotional distress. Both are equally difficult to prove. Both should compel recovery if injury results, be it purely emotional or partly physical . . .. The damage

---

[15] In *Ver Hagen* the defendant allegedly constructed a faulty fireplace in a dwelling, causing the dwelling to be consumed by fire. The plaintiff alleged severe emotional distress resulting from his fear for his safety while fleeing the burning home.

is equally real whatever name is applied." *Ver Hagen,* 47 Wis. 2d at 228.

Equally problematic, the *Ver Hagen* court did not define which physical manifestations of emotional distress would permit recovery. In fact, defining physical manifestation has proven a perplexing task, resulting in disparate classifications of symptoms across jurisdictions.[16] Over time, the physical manifestation requirement proved unsatisfactory because it could deny recovery even when a person genuinely suffered severe emotional distress. As a result, the court began to carve out exceptions to the physical manifestation requirement. For example, in *La Fleur v. Mosher,* 109 Wis. 2d 112, 325 N.W.2d 314 (1982), a 14-year-old girl was negligently confined in a jail cell for 13 hours without food or water but suffered no physical manifestations of her emotional distress. The majority concluded that negligent confinement by its nature would act as a guarantee that the plaintiff's severe

---

[16] The *Ver Hagen* dissenters asserted that "severe mental disturbances are almost always characterized by some type of physical reaction and frequently it is only an accident of pleading that the adverse consequences complained of are characterized as mental rather than physical." 47 Wis. 2d at 229.

The three justices in *Garrett v. City of New Berlin,* 122 Wis. 2d at 235–36, retaining the physical manifestation requirement, did not demand a severe physical symptom. They viewed that "insomnia coupled with some other physical symptom may be sufficient," 122 Wis. 2d at 237, and that "hysteria" is a recognized physical manifestation of emotional distress. 122 Wis. 2d at 236.

Cases are not consistent in evaluating what symptoms qualify as physical manifestations. *See* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, Prosser and Keeton on the Law of Torts, sec. 54 at p. 363 (5th ed. 1984).

emotional distress was genuine, thus declaring an exception to the *Ver Hagen* rule.[17] The emerging trend in other states appears to be to abolish the requirement of a physical injury.[18]

In summary, as of 1984, these Wisconsin cases had established that for bystanders to recover for negligent infliction of emotional distress, the plaintiffs must prove (1) that they were in the zone of danger; (2) that they feared for their own safety; and (3) that their emotional distress had an accompanying or resulting physical injury.

In 1985, with *Garrett v. City of New Berlin,* 122 Wis. 2d 223, 362 N.W.2d 137 (1985), the first two requirements for a bystander's claim for negligent infliction of emotional distress claim began to erode. In *Garrett* the court was presented with sympathetic facts and apparently severe emotional distress, but the first two elements of a claim for negligent infliction of emotional distress were lacking. Thirteen-year-old Raymond Garrett and his 14-year-old sister Connie Garrett were watching an outdoor movie. Connie was leaning against a fence at the edge of the theater grounds. Raymond was about 15 feet away lying on a blanket. At about 10:45 p.m. a city police squad car swept the fence area with its spotlight and accelerated in pursuit of the children observed. Driving without

---

[17] In *La Fleur* the court characterized the requirement of proof of physical manifestation of emotional distress as based on public policy. *La Fleur v. Mosher,* 109 Wis. 2d 112, 118, 325 N.W.2d 314 (1982).

[18] Scott D. Marrs, *Mind Over Body: Trends Regarding the Physical Injury Requirement in Negligent Infliction of Emotional Distress and "Fear of Disease" Cases,* 28 Tort & Ins. L.J. 1, 4 (1992).

headlights, the officer ran over Raymond causing severe and permanent injuries.

Connie watched the squad car drive over Raymond. She ran to him and saw his twisted and bloody legs. Although Connie sustained no physical injuries as a result of the collision and never feared for her own safety, *Garrett,* 122 Wis. 2d at 226–27, she sued the theater owner and the city, seeking to recover for the alleged severe emotional shock and distress she suffered as a result of witnessing the *infliction* of the injury.

Three justices concluded that *Waube* was inapposite on its facts, and thus the decision need not be applied, modified, or abandoned. These justices characterized the plaintiff in *Waube* as an observer who was not directly involved in the incident. In contrast, they characterized Connie Garrett as a *participant* in the incident who was entitled to recover for negligently inflicted emotional distress even though she had not feared for her own safety, had not suffered a physical symptom of her distress any more severe than insomnia, and had not been in the zone of danger.

The justices held, without conceding any change in the elements of a bystander's claim for negligent infliction of emotional distress, that public policy considerations did not preclude Connie from maintaining her cause of action for emotional distress. Connie was a close relative—a sibling—who observed the victim's traumatic injury from a nearby vantage point and observed his injuries and pain. *Garrett,* 122 Wis. 2d at 234. The three justices then concluded that allowing Connie to recover would not be likely to "open the way for fraudulent claims or . . . enter a field with no sensible stopping point." *Garrett,* 122 Wis. 2d at 234.

Four justices were united in criticizing the *Garrett* plurality's attempt to distinguish the case from *Waube.* One justice dissented, calling for adherence to the elements of a negligent infliction of emotional distress claim that had been hammered out by the court over the previous half century.[19]

The remaining three justices concurred in the plurality's mandate but would have expressly overruled *Waube* and abandoned the zone of danger rule as having no place in modern Wisconsin negligence law. The concurring opinion would have also eliminated the requirement that a plaintiff fear for his or her own safety and would have held that negligently inflicted emotional distress is compensable "regardless of whether this emotional distress [is] subsequently physically manifested." *Garrett,* 122 Wis. 2d at 240.[20]

The concurring justices advocated replacing the *Waube, Klassa,* and *Ver Hagen* requirements for claims of negligent infliction of emotional distress with the usual rules of negligence. These justices concluded that "if there is the requisite sequence of negligence, causation, and damages—whether physical, emotional, or both—there ordinarily should be liability." *Garrett,* 122 Wis. 2d at 241. Whether liability should be imposed

---

[19] Furthermore, the justice pointed out that the plurality circumvented several of the public policy considerations that were the basis for the zone of danger rule. These considerations precluded recovery by Connie Garrett: the injury was too remote from the negligence, the injury was out of proportion to the culpability of the negligent tortfeasor, the way was open for fraudulent claims, and no sensible or just stopping point was set. *Garrett v. City of New Berlin,* 122 Wis. 2d at 245–46.

[20] The concurring opinion took the approach of the dissent in *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 228, 177 N.W.2d 83 (1970) (Wilkie, J. dissenting).

should be determined case by case, based on public policy considerations. *Garrett,* 122 Wis. 2d at 242.

Thus, six justices in *Garrett* concluded that the plaintiff should recover, but they also recognized, explicitly or implicitly, that existing rules governing the tort of negligent infliction of emotional distress on a bystander would bar the plaintiff's claim. Three of them allowed recovery, clinging in form but not in substance to the traditional elements of this negligent infliction of emotional distress claim.[21] The other three urged reconsideration of the *Waube, Klassa,* and *Ver Hagen* cases to determine whether a bystander may recover for negligent infliction of emotional distress.

This history of the court's decisions in negligent infliction of emotional distress cases demonstrates the problem with the zone of danger doctrine: while it appears to allay the court's apprehension of opening the doors to trivial or fraudulent claims and to unlimited liability for a negligent tortfeasor, its rigid application prevents redress in deserving cases. Its companion rules of fear for one's own safety and physical manifestation of emotional distress have the same effect.

The nearly 60 years of court decisions since *Waube* demonstrate that rigid doctrinal limitations on liability to bystanders produce arbitrary, incongruous and indefensible results. Plaintiffs in substantially the

---

[21] *See also Westcott v. Mikkelson,* 148 Wis. 2d 239, 434 N.W.2d 822 (Ct. App. 1988) (applying the *Garrett* analysis of participant and object of tortious activity to a mother who sued a physician for negligent infliction of emotional distress resulting from alleged negligent delivery of her child and the death of the child).

same position have been treated differently.[22] These defects have led the court to sow confusion in the law by circumventing the rules as in *La Fleur* and *Garrett*.

## B.

Claimants and courts need a framework for evaluating a bystander's claims of negligent infliction of emotional distress. The framework should be free of artificial, vague and inconsistent rules, yet should allow plaintiffs to recover for negligently inflicted severe emotional distress while protecting tortfeasors from spurious claims, from claims concerning minor psychic and emotional shocks, and from liability disproportionate to culpability.

We conclude that the traditional elements of a tort action in negligence—negligent conduct, causation and injury (here severe emotional distress)[23]—should serve

[22] The plaintiffs in *Garrett, Klassa* and *Waube,* were not in fear for their own safety. The plaintiffs in *Garrett* and *Waube* were not in the zone of danger; the plaintiff in *Klassa* was in the building at the time of the explosion and was arguably in the zone of danger. In *Garrett, Klassa* and *Waube,* the plaintiffs witnessed the incidents first hand. The *Klassa* plaintiff leaving a burning building was more clearly a "participant" than Connie Garrett. Yet the *Klassa* and *Waube* plaintiffs did not recover, while Connie Garrett did.

[23] We borrow the requirement of severe emotional distress from the tort of intentional infliction of emotional distress. *See Alsteen v. Gehl,* 21 Wis. 2d at 360–61. *See also* Restatement (Second) of Torts, sec. 46, comment *j,* p. 77, that attempts to define actionable severe emotional distress in the tort of intentional infliction of emotional distress as follows: "Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright,

as the framework for evaluating a bystander's claim of negligent infliction of emotional distress. Like the concurring justices in *Garrett,* we conclude that these elements, when combined with limiting liability based on public policy considerations, provide a better alternative for evaluating a bystander's claim than do the zone of danger and fear for one's safety rules.

■

We further conclude, as we did in *Alsteen* with respect to intentional infliction of emotional distress, that a claimant for negligent infliction of emotional distress need not prove physical manifestation of severe emotional distress. We do so for several reasons. First, as we have seen, the physical manifestation requirement has denied recovery for serious emotional distress not accompanied by physical symptoms. Second, given the present state of medical science, emotional distress can be established by means other than proof of physical manifestation. Third, although it was designed to ensure against manufactured or feigned claims, the physical manifestation requirement has encouraged extravagant pleading, distorted testimony, and meaningless distinctions between physical and emotional symptoms. Detection of false claims is best left to the adversary process. Finally, we can find no evidence that the predicted deluge of litiga-

horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is part of the price of living among people. The law intervenes only where the distress is so severe that no reasonable man could be expected to endure it."

tion has occurred in states that have abandoned either the zone of danger or physical manifestation rule.

## C.

We hold that Sharon Bowen's complaint has set forth the elements of a cause of action for negligent infliction of emotional distress: negligent conduct, causation, and injury (severe emotional distress). It does not necessarily follow, however, that the claim must be allowed to go forward. A court may decide, as a matter of law, that considerations of public policy require dismissal of the claim. These public policy considerations are an aspect of legal cause, although not a part of the determination of cause-in-fact.

The application of public policy considerations is a function solely of the court. While it is generally better procedure to submit negligence and cause-in-fact issues to the jury before addressing legal cause, that is, public policy issues, *Padilla v. Bydalek,* 56 Wis. 2d 772, 779–80, 203 N.W.2d 15 (1973), *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 240, 55 N.W.2d 29 (1952), the circuit court or this court may grant summary judgment on public policy grounds before a trial[24] or a court may bar liability on public policy considerations after trial.[25] When the pleadings present a question of public policy, the court may make its deter-

---

[24] *Hass v. Chicago & North Western Railway Co.,* 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970); *Colla v. Mandella,* 1 Wis. 2d 594, 85 N.W.2d 345 (1957).

[25] *Coffey v. Milwaukee,* 74 Wis. 2d 526, 542, 247 N.W.2d 132 (1976).

mination on public policy grounds before trial.[26] In contrast, when the issues are complex or the factual connections attenuated, it may be desirable for a full trial to precede the court's determination.

In this case this court is determining public policy considerations before trial because the facts presented are simple, and because the question of public policy is fully presented by the complaint and the motion to dismiss. The question is whether, under the circumstances of this case, it contravenes public policy to permit Sharon Bowen to recover for severe emotional distress.

Historically, the tort of negligent infliction of emotional distress has raised two concerns: (1) establishing authenticity of the claim and (2) ensuring fairness of the financial burden placed upon a defendant whose conduct was negligent. A court deals with these concerns by exploring in each case such public policy considerations as: (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point. The court has

[26] *Hass v. Chicago & North Western Railway Co.,* 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 541–43, 247 N.W.2d 132 (1976); *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 737–738, 275 N.W.2d 660 (1979).

stated these public policy considerations that may preclude liability in capsule form as follows: When it would shock the conscience of society to impose liability, the courts may hold as a matter of law that there is no liability. *Pfeifer v. Standard Gateway Theatre,* 262 Wis. 229, 238, 55 N.W.2d 29 (1952).[27]

The case at bar involves negligent infliction of emotional distress on a bystander. We therefore discuss the public policy considerations applicable to the tort of negligent infliction of emotional distress in this fact situation.

Three factors, taken together, help assure that the claim in this case is genuine, that allowing recovery is not likely to place an unreasonable burden upon the defendant, and that allowance of recovery will not contravene the other public policy considerations we have set forth.

First, the victim was seriously injured or killed. Sharon Bowen's severe emotional distress in this case stems from the fatal injury of another person. A fatal injury or a physical injury that a reasonable person would view as serious can be expected to cause severe

---

[27] For cases discussing public policy considerations, *see, e.g., Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 55 N.W.2d 29 (1952); *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 183, 77 N.W.2d 397 (1956); *Colla v. Mandella,* 1 Wis. 2d 594, 598, 85 N.W.2d 345 (1957); *Longberg v. H.L. Green Co.,* 15 Wis. 2d 505, 516, 113 N.W.2d 129 (1962); *Schilling v. Stockel,* 26 Wis. 2d 525, 531–534, 133 N.W.2d 335 (1965); *Hass v. Chicago & North Western Railway Co.,* 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970); *Howard v. Mt. Sinai Hospital, Inc.,* 63 Wis. 2d 515, 518–19, 217 N.W.2d 383 (1974); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976); *Stewart v. Wulf,* 85 Wis. 2d 461, 479, 271 N.W.2d 79 (1978); *Morgan v. Pennsylvania,* 87 Wis. 2d 723, 737–738, 275 N.W.2d 660 (1979).

distress to a bystander. Less serious physical harm to a victim would not ordinarily result in severe emotional distress to a reasonable bystander of average sensitivity.

Second, the plaintiff was the victim's mother. Sharon Bowen's severe emotional distress in this case stems from the fact that the fatally injured victim was her 14-year-old son. The court concludes that a tortfeasor may be held liable for negligent infliction of emotional distress on a bystander who is the spouse, parent, child, grandparent, grandchild or sibling of the victim. We agree that emotional trauma may accompany the injury or death of less intimately connected persons such as friends, acquaintances, or passersby. Nevertheless, the suffering that flows from beholding the agony or death of a spouse, parent, child, grandparent, grandchild or sibling is unique in human experience and such harm to a plaintiff's emotional tranquility is so serious and compelling as to warrant compensation.[28] Limiting recovery to those plaintiffs who have the specified family relationships with the victim acknowledges the special qualities of close family relationships, yet places a reasonable limit on the liability of the tortfeasor.

Third, the plaintiff observed an extraordinary event. Sharon Bowen's severe emotional distress in this case stems from her arriving on the scene of a serious accident minutes after it occurred and seeing her 14-year-old son fatally injured and entangled in the

---

[28] The author of the opinion would allow recovery when the plaintiff can prove that the victim is a loved one, that is, when the plaintiff and the victim have a relationship analogous to one of the relationships specified.

wreckage.[29] Witnessing either an incident causing death or serious injury or the gruesome aftermath of such an event minutes after it occurs is an extraordinary experience, distinct from the experience of learning of a family member's death through indirect means. Thus it is an appropriate place to draw the line between recoverable and non-recoverable claims.

The tort of negligent infliction of emotional distress is not designed to compensate all emotional traumas of everyday life. All of us can expect at least once in our lives to be informed of the serious injury or death of a close family member such as a spouse, parent, child, grandparent, grandchild, or sibling, perhaps due to the negligence of another. Although the shock and grief growing out of such news is great, it is not compensable emotional distress under this tort action.[30] The distinction between on the one hand witnessing the incident or the gruesome aftermath of a serious accident minutes after it occurs and on the other hand the experience of learning of the family member's death through indirect means is an appropriate place to draw the line between recoverable and non-recoverable claims.

---

[29] The requirement that the plaintiff observe the incident is construed permissively by some courts and not by others. W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, Prosser and Keeton on the Law of Torts, sec. 54 at p. 366, n.73 (5th ed. 1984), and p. 61 1988 Supp.

*See also* Annot., *Immediacy of Observation of Injury as Affecting Right to Recover Damages for Shock or Mental Anguish from Witnessing Injury to Another,* 5 A.L.R.4th 833 (1981).

[30] Under appropriate circumstances, of course, certain individuals can claim loss of society and companionship.

The tort of negligent infliction of emotional distress compensates plaintiffs whose natural shock and grief upon the death or severe physical injury of a spouse, parent, child, grandparent, grandchild, or sibling are compounded by the circumstances under which they learn of the serious injury or death. This tort reflects, for example, the intensity of emotional distress that can result from seeing the incident causing the serious injury or death first hand or from coming upon the gruesome scene minutes later.

To hold Elroy Rautmann responsible for Sharon Bowen's injury is neither too remote from nor out of proportion to his allegedly negligent driving, nor in retrospect does it appear too extraordinary that such negligence should have brought about the harm. It is not unusual for a parent to suffer severe emotional distress upon viewing an accident causing the death of a child or upon viewing its aftermath with the severely injured child entangled in the wreckage.

Allowing Sharon Bowen to seek recovery for her severe emotional suffering under the circumstances does not place an unreasonable burden on the alleged tortfeasor in this case. The circumstances here, like the circumstances in *La Fleur,* guarantee the genuineness of Sharon Bowen's emotional distress.[31] Sharon Bowen's ordeal was no less shocking or agonizing than if she had been a *"Garrett* participant" who had witnessed the impact. Thus allowing Sharon Bowen to recover does not raise the specter of unlimited liability for tortfeasors.

Contrary to Elroy Rautmann's argument, there is, then, a stopping point to a tortfeasor's liability. The

[31] *See also Hawes v. Germantown Mut. Ins. Co.,* 103 Wis. 2d 524, 532, 309 N.W.2d 356 (Ct. App. 1981); *Redepenning v. Dore,* 56 Wis. 2d 129, 143, 201 N.W.2d 580 (1972).

emotional harm from the serious injury or loss of a spouse, parent, child, grandparent, grandchild or sibling is not the harm compensated in this tort. The shock of seeing efforts to save the life of an injured spouse in an ambulance or hospital, for example, will not be compensated because it is a life experience that all may expect to endure. The compensable serious emotional distress of a bystander under the tort of negligent infliction of emotional distress is not measured by the acute emotional distress of the loss of the family member. Rather the damages arise from the bystander's observance of the circumstances of the death or serious injury, either when the incident occurs or soon after.

In summary, to determine on the basis of public policy considerations whether to preclude liability for severe emotional distress to a bystander a court must consider three factors: the severity of the injury to the victim, the relationship of the plaintiff to the victim, and the extraordinary circumstances surrounding the plaintiff's discovery of the injury. These factors relate to the underlying principles of the tort; they are relevant to measuring the authenticity of the claim and the limits of liability for emotional harm resulting from a defendant's negligence. Courts must rule on these factors and the public policy considerations on a case-by-case basis.

In this case we have applied the public policy considerations and conclude that Sharon Bowen has stated a claim upon which relief may be granted; public policy considerations do not preclude liability in this case.

For the reasons set forth, we reverse that part of the decision of the court of appeals dismissing Sharon

Bowen's claim and remand the cause to the circuit court for further proceedings consistent with this opinion.

### III.

We turn now to the estate's claim for negligent infliction of emotional distress on Steven Bowen. The emotional distress claimed relates to the apprehension and fear Steven Bowen suffered before his death. This claim presents a different fact situation from Sharon Bowen's claim but involves the same tort of negligent infliction of emotional distress. The court has not yet had occasion to deal directly with a claim for negligent infliction of emotional distress immediately preceding the victim's death.

The estate points to no evidence in the record suggesting that Steven Bowen experienced any physical manifestation of the alleged pre-impact emotional distress. Accordingly, the court of appeals, relying on *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 227, 177 N.W.2d 83 (1970), denied the estate's claim on the grounds that the tort of negligent infliction of emotional distress requires that the emotional distress be manifested by physical injury[32] and that no claim of physical injury can be made in this case. We have concluded in this case that no physical manifestation of severe emotional distress is needed.

---

[32] *See, e.g., Garrett v. City of New Berlin,* 122 Wis. 2d 223, 234–37, 362 N.W.2d 137 (1985); *Rennick v. Fruehauf Corp.,* 82 Wis. 2d 793, 804–05, 264 N.W.2d 264 (1978); *Redepenning v. Dore,* 56 Wis. 2d 129, 143, 201 N.W.2d 580 (1972); *Vinicky v. Midland Casualty Ins. Co.,* 35 Wis. 2d 246, 253, 151 N.W.2d 77 (1967).

While the estate has set forth the elements of a claim for negligent infliction of emotional distress, when we apply the public policy considerations described above, we conclude that the estate's claim should be dismissed.[33] It is mere speculation to assert that Steven Bowen knew of the impending impact or suffered severe emotional distress in the moments before impact. Allowance of recovery under the circumstances of this case would be too likely to open the way to fraudulent claims.

For the reasons set forth we affirm that part of the decision of the court of appeals dismissing the estate's claim.

In summary, we reverse that part of the decision of the court of appeals dismissing the claim of Sharon Bowen and affirm that part of the decision of the court of appeals dismissing the claim of the estate of Steven Bowen; we remand the cause to the circuit court for proceedings not inconsistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed in part, affirmed in part, and remanded to the circuit court.

JON P. WILCOX, J. *(concurring).* The majority opinion prudently limits a bystander's cause of action

---

[33] *Fogarty v. Campbell 66 Express, Inc.,* 640 F. Supp. 953 (D. Kan. 1986) (no recovery for driver instantly killed at intersection collision); *In re Aircraft Disaster Near Chicago, Ill.,* 507 F. Supp. 21 (N.D. Ill. 1980) (no recovery for decedent for fright and terror in anticipation of injury in airplane crash); *Nye v. Pennsylvania Dept. of Trans.,* 331 Pa. Super. 209, 480 A.2d 318 (1984) (no recovery for pre-impact fright from fatal head-on collision).

for negligent infliction of emotional distress to those instances where the bystander witnesses or comes immediately upon the scene of a close relative's serious or fatal injury. Because these public policy limitations effectively help to ensure the authenticity of bystander claims for negligent infliction of emotional distress, I concur with today's result. I am concerned, however, that other aspects of the majority opinion, when applied to situations where these constraints do not exist, will lead to fraudulent claims, excessive liability, and unnecessary litigation.

Courts have long recognized the need to assure the validity of claims for emotional distress. Over time, and across jurisdictions, this need has revealed itself in various prophylactic rules, such as the requirement that plaintiffs suffer "physical impact," or that bystanders be in the "zone of danger," or that there is some physical manifestation of emotional distress. In a perfect world, such rules would not be necessary. Today, for instance, I believe the public policy limitations the majority places on bystander recovery are more rational and evenhanded than *Waube's* zone of danger rule.

Still, I do not share the majority's unsupported view that medical science has now advanced to the point that we can easily distinguish genuine claims for emotional distress from the feigned.[1] As a result, I think the majority unwisely and unnecessarily declares that from this point on, "regardless of the fact situation," claims for the negligent infliction of emotional distress need only satisfy the standard elements

---

[1] As the majority concedes, most states continue to require bystanders claiming negligent infliction of emotional distress to either have been in the zone of danger and/or exhibit some physical manifestation of their emotional distress.

of negligence, i.e., breach of duty, injury, and cause-in-fact, in order to survive a motion to dismiss. Given that on motions for summary judgment, every reasonable inference must be accorded the nonmoving party's pleadings, *see, State v. American TV,* 146 Wis. 2d 292, 300, 430 N.W.2d 709 (1988), the majority's approach virtually assures that every claim for negligent infliction of emotional distress will go to the jury.

Perhaps if such an outcome entailed no cost to those who will now be forced to defend themselves against highly speculative claims, and were it also not true that court dockets are already overburdened, this court might be justified in leaving all claims for emotional distress to the adversarial process. I, however, think that such costs, combined with the long-recognized risk of fraud in these cases, makes it incumbent upon this court to continue to impose some type of public policy constraints on this cause of action.

I would simply require that in order to survive a motion for summary judgment, plaintiffs have the burden of producing some extrinsic, verifiable evidence to support their claims. I would not require physical impact on the person. Wisconsin has consistently rejected that requirement. Nor must there be physical manifestation of emotional distress. Nevertheless, plaintiffs need more than their own uncorroborated claims of emotional injury to survive a motion to dismiss.

An example illustrates my concerns. Take the case of a person who claims that while crossing the street, they were nearly struck by a passing motorist, and that the fright occasioned by this near miss has caused them great emotional distress. If, as the majority instructs, the standard elements of negligence apply to this claim, the plaintiff will almost certainly survive a

motion for summary judgment. I do not think this is appropriate. The potential for fraud is simply too great.

Life in our society is full of near misses, as anyone who has run the gauntlet of rush-hour traffic can attest. These experiences can be extremely distressing. Nevertheless, people should not be able to convert such occurrences into a source of monetary recovery. Nor do I believe that Wisconsin has ever allowed recovery in these cases when the complained-of emotional distress was not accompanied by some extrinsically-ascertainable proof of the offending event.[2]

My concern is that the trial courts of this state will take from today's case the view that claims for negligent infliction of emotional distress are to be handled precisely like any other type of negligence claim. I do not think that should be the case.

---

[2] This is not to say that Wisconsin requires proof of physical impact on the plaintiff's body. But in all the previous reported cases in this area, the plaintiff's alleged injury resulted from an event which was susceptible to extrinsic verification. For instance, in *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935) the defendant's car struck and killed the plaintiff's daughter. In *Colla v. Mandella,* 1 Wis. 2d 594, 595, 85 N.W.2d 345 (1957), the plaintiff suffered emotional distress when the defendant's truck struck her house. In *Pankopf v. Hinkley,* 141 Wis. 146, 147–48, 123 N.W. 120 (1909), the plaintiff was riding with several other people when the coach in which they were passengers was forced off the road by the defendant's negligent driving. In *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 177 N.W.2d 83 (1970), the plaintiff's house caught on fire due to the defendant's negligent construction of a fireplace. In *Garrett v. City of New Berlin,* 122 Wis. 2d 223, 226, 362 N.W.2d 137 (1985), a police car ran over the plaintiff's brother, causing him severe and permanent injuries.

I am authorized to state that Justices ROLAND B. DAY and DONALD W. STEINMETZ join in this concurring opinion.