Bonnie Pierce, Plaintiff-Appellant-Petitioner,

v.

Physicians Insurance Company of Wisconsin, Inc.,
Frederick J. Bartizal, Jr., M.D., OHIC Insurance
Company, and Theda Clark Regional Medical
Center, Wisconsin Patients Compensation Fund,
Defendants-Respondents.

Supreme Court

*No. 01–2710. Oral argument April 28, 2004 and November 3,
2004.—Decided February 17, 2005.*

2005 WI 14

(Also reported in 692 N.W.2d 558.)

For the plaintiff-appellant-petitioner there were briefs by *Jolene D. Schneider* and *Peterson, Berk & Cross, S.C.,* Appleton, and oral argument by *Jolene D. Schneider* and *Avram D. Berk.*

For the defendants-respondents Physicians Insurance Company of Wisconsin, Inc. and Frederick J. Bartizal, M.D., there were briefs by *Michael B. VanSicklen, John C. Schaak, Naikang Tsao* and *Foley & Lardner LLP, Madison,* and oral argument by *Michael B. VanSicklen.*

For the defendants-respondents Theda Clark Regional Medical Center and OHIC Insurance Company there were briefs by *Todd M. Weir,* Milwaukee, *Patricia Sommer,* Madison, and *Otjen, Van Ert, Lieb & Weir, S.C.,* and oral argument by *Patricia Sommer.*

For the defendant-respondent Wisconsin Patients Compensation Fund there were briefs by *R. George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay, and oral argument by *R. George Burnett.*

Amicus curiae briefs were filed by *Charles J. Crueger, Julie M. Rusczek* and *Michael Best & Friedrich LLP,* Milwaukee, on behalf of Wisconsin Medical Society and Wisconsin Hospital Association, Inc.

Amicus curiae briefs were filed by *Martha H. Heidt* and *Doar, Drill & Skow, S.C.,* Baldwin, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. N. PATRICK CROOKS, J. Petitioner Bonnie Pierce (Pierce) seeks review of an unpublished per curiam decision of the court of appeals, which affirmed the circuit court's grant of summary judgment. This case presents the narrow issue of whether a mother who suffers the stillbirth of her infant as a result of medical malpractice has a personal injury claim involving negligent infliction of emotional distress, which includes the distress arising from the injuries and stillbirth of her daughter, in addition to her derivative claim for wrongful death of the infant. In these unusual circumstances, we conclude that the mother may recover as a parent, for the wrongful death of the stillborn infant; and as a patient, for her personal injuries including the negligent infliction of emotional distress. We also conclude the stipulation of the parties did not waive this claim. Accordingly, we reverse the decision of

the court of appeals that affirmed the circuit court's order, which dismissed that portion of the mother's personal injury claim for negligent infliction of emotional distress arising from the injuries and stillbirth of her daughter.

I

¶ 2. The relevant facts of this case are undisputed. Bonnie Pierce was nearly 35 weeks pregnant when she arrived for an appointment with her obstetrician, Dr. Frederick Bartizal, Jr., (Bartizal) on November 18, 1996. Bartizal examined Pierce and determined that she was four centimeters dilated. She was subsequently admitted to Theda Clark Regional Medical Center (Theda Clark) for care.

¶ 3. Later that day, while at Theda Clark, Pierce noticed her fetal monitor flashing. A nurse explained to Pierce that her baby's heart rate was declining because the umbilical cord was wrapped around the baby's neck. The nurse repositioned Pierce, apparently believing that the problem would be solved. At 6:00 p.m., Bartizal visited Pierce to examine her and the fetal monitor readings. Bartizal examined Pierce for about 10 to 15 minutes and informed her that she was five centimeters dilated. He explained to her that if she did not go into labor that night, he would induce labor the next morning.

¶ 4. Pierce fell asleep at approximately 12:45 a.m. without going into labor. At 1:30 a.m., she awoke as a nurse searched for the baby's heartbeat. After the first nurse was unable to find a heartbeat, a second nurse attempted to do so. The second nurse was also unable to detect a fetal heartbeat. In Bartizal's absence, the nurses called on Dr. Darr, who examined Pierce and

performed an ultrasound. Doctor Darr informed Pierce that he was not able to detect the baby's heartbeat or any fetal activity. Shortly thereafter, Bartizal returned to the hospital to inform Pierce that her baby would be stillborn. Pierce was treated with an epidural and IV fluids before her baby, named Brianna, was delivered vaginally by vacuum extraction. Pierce kept Brianna with her for approximately 10 hours while she and family members had photographs taken with Brianna.

¶ 5. On November 16, 1999, Pierce filed a claim in the Outagamie County Circuit Court alleging that Bartizal, Theda Clark, and their respective insurers were liable for wrongful death and the negligent infliction of emotional distress. On the wrongful death claim, the defendants stipulated to their causal negligence and settled the claim. The other claim, negligent infliction of emotional distress, alleged that the defendants negligently caused Brianna's death and stillbirth, and that experiencing the baby's stillbirth caused Pierce physical injury and severe emotional distress.

¶ 6. The defendants filed a motion for summary judgment on Pierce's claim for negligent infliction of emotional distress. The circuit court, Judge James T. Bayorgeon presiding, granted the motion in part. Judge Bayorgeon relied on both Wis. Stat. ch. 655 and Wis. Stat. § 893.55,[1] as well as *Kwaterski v. State Farm Mutual Automobile Insurance Co.*, 34 Wis. 2d 14, 148

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

Wisconsin Stat. § 893.55 states, in relevant part:

(4)(a) In this subsection, "noneconomic damages" means moneys intended to compensate for pain and suffering; humiliation; embarrassment; worry; mental distress; noneconomic effects of disability including loss of enjoyment of the normal activities, benefits and pleasures of life and loss of mental or physical health,

N.W.2d 107 (1967), to dismiss that portion of Pierce's claim for the negligent infliction of emotional distress arising from the injuries and stillbirth of her daughter. The court held that the plaintiff could only recover for the emotional pain and suffering damages that resulted from her own injuries. Subsequently, the parties agreed to a stipulation that Bartizal and Theda Clark were negligent in the management of labor, and that such negligence caused the death of Brianna. The stipulation provided that the defendants would pay damages for loss of society and companionship and for funeral expenses. Based on a second stipulation, the other claims were dismissed, with the exception of the claims that were dismissed by the court pursuant to the court's order of August 20, 2001, which claims were before the court on the motion for partial summary judgment.

¶ 7. On October 11, 2003, the court of appeals affirmed the circuit court's grant of summary judgment. The court of appeals relied on *Finnegan v. Patients Compensation Fund*, 2003 WI 98, 263 Wis. 2d 574, 666 N.W.2d 797, and *Bowen v. Lumbermens Mutual Casualty Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), to

well-being or bodily functions; loss of consortium, society and companionship; or loss of love and affection.

(b) The total noneconomic damages recoverable for bodily injury or death, including any action or proceeding based on contribution or indemnification, may not exceed the limit under par. (d) for each occurrence on or after May 25, 1995, from all health care providers and all employees of health care providers acting within the scope of their employment and providing health care services who are found negligent and from the patients compensation fund.

. . . .

(d) The limit on total noneconomic damages for each occurrence under par. (b) on or after May 25, 1995, shall be $350,000 and shall be adjusted by the director of state courts. . . .

determine that Pierce did not satisfy the legal standard for recovery of emotional damages related to Brianna's stillbirth. The court of appeals concluded that Pierce did not satisfy the three-prong test of *Bowen*, which had recently been applied to plaintiffs' claim in *Finnegan*.[2] Specifically, the court held that while Pierce observed her daughter suffering, she did not witness the extraordinary event that caused her daughter's suffering—the umbilical cord wrapped around Brianna's neck. Additionally, the court noted that while Pierce's physician may have been negligent in waiting to induce labor, he did not cause the umbilical cord to wrap around the baby's neck. In response, Pierce filed a motion for reconsideration that the court denied on December 4, 2003.

¶ 8. This court granted Pierce's petition for review. Oral arguments were held on April 28, 2004. On June 16, 2004, we ordered the parties to file supplemental briefs addressing the following issues:

> 1. Was the Circuit Court mistaken in its reliance on the case of *Kwaterski v. State Farm Mut. Auto. Ins. Co.,* 34 Wis. 2d 14, 148 N.W.2d 107 (1967) for its conclusion that: "A mother's injuries do not include the injury to or death of a child as part of her own injuries?"

---

[2] The court in *Bowen v. Lumbermens Mutual Casualty Co.,* 183 Wis. 2d 627, 633, 517 N.W.2d 432 (1994), established a three-prong test to determine whether a "bystander's" claim for negligent infliction of emotional distress can be maintained. The test is as follows: (1) the injury suffered by the victim must have been fatal or severe; (2) the victim and the plaintiff must be related as spouses, parent-child, grandparent-grandchild or siblings; (3) the plaintiff must have observed an extraordinary event, namely the incident and injury or the scene soon after the incident with the injured victim at the scene.

2. Is it appropriate, under relevant case law, to separate or compartmentalize Bonnie Pierce's claimed emotional injury into what is related to her own pain and suffering (including emotional distress) resulting directly from the physical discomfort of child birth, as against her pain and suffering (including emotional distress) resulting from the medical malpractice that caused the death and stillbirth of her child, Briana Lynn Marcks?

3. Did the Stipulation which resulted in the Circuit Court's Order of October 3, 2001, in effect waive either claim referenced in question number 2 that Bonnie Pierce had for her own pain and suffering, including her own claimed emotional injury?

¶ 9. Additional oral arguments were heard on November 3, 2004.

II

¶ 10. The focus of this case is on whether Pierce may bring a claim which includes the negligent infliction of emotional distress arising from the injuries and stillbirth of her daughter, under the undisputed factual circumstances. This is a question of law that we review de novo, independently of the reasoning of the circuit court and the court of appeals, but benefiting from their analyses. *See, e.g., Beloit Liquidating Trust v. Grade,* 2004 WI 39, ¶ 17, 270 Wis. 2d 356, 677 N.W.2d 298 (question of law whether complaint states a claim); *see also State v. Lombard,* 2004 WI 95, ¶ 17, 273 Wis. 2d 538, 684 N.W.2d 103 (statutory interpretation is a question of law, subject to de novo appellate review).

¶ 11. Wisconsin Stat. ch. 655 governs claims in the event of medical malpractice. According to Wis. Stat. § 655.007, "any patient or . . . any . . . parent . . . of the patient having a derivative claim for injury or death

on account of malpractice is subject to this chapter." Wisconsin Stat. § 655.017[3] limits the noneconomic damages recoverable to those individuals listed in Wis. Stat. § 893.55(4). Section 893.55(4)(a) caps noneconomic damages, defined in part as "pain and suffering; ... mental distress. ..." "Notwithstanding the limits on noneconomic damages under this section, damages recoverable against health care providers ... for wrongful death are subject to the limit under s. 895.04(4)." Section 893.55(4)(f). Wisconsin Stat. § 895.04(4), in turn, separately caps damages "in the case of a deceased minor ... for loss of society and companionship (which) may be awarded to the ... parents of the deceased. ..."

¶ 12. Here, we have the unique situation where the patient, Bonnie Pierce, was also the parent of the patient, Brianna Lynn Marcks. There is no dispute that Pierce has the derivative claim of a parent for the wrongful death of Brianna under Wis. Stat. § 655.007.[4] It is Pierce's direct claim for emotional distress that is at issue.

¶ 13. The court of appeals characterized Pierce's direct claim for negligent infliction of emotional dis-

---

[3] Wisconsin Stat. § 655.017 states:

The amount of noneconomic damages recoverable by a claimant or plaintiff under this chapter for acts or omissions of a health care provider if the act or omission occurs on or after May 25, 1995, and for acts or omissions of an employee of a health care provider, acting within the scope of his or her employment and providing health care services, for acts or omissions occurring on or after May 25, 1995, is subject to the limits under s. 893.55(4)(d) and (f).

[4] Wisconsin Stat. § 655.007 states, in relevant part: "On and after July 24, 1975, any patient or the patient's representative having a claim or any spouse, parent, minor sibling or child of the patient having a derivative claim for injury or death on account of malpractice is subject to this chapter."

tress as a bystander claim. That is, that Pierce was merely a witness to the stillbirth of her daughter Brianna and could recover only if she met the test we set forth in *Bowen* and *Finnegan*. We conclude differently. Because of the unusual position of Pierce, as a mother in labor, the result of which was a stillbirth, she clearly was not a witness to the "gruesome aftermath" of an automobile accident that eventually resulted in the death of her child, as was the case in *Bowen*, 183 Wis. 2d at 634–35. Nor was Pierce the witness of "the physical deterioration and death" of her child, as was the case in *Finnegan*, 263 Wis. 2d 574, ¶ 20. Rather, she was a participant, and a victim of the actionable conduct—medical malpractice—that gave rise to her claim. Accordingly, *Bowen* and *Finnegan* are inapposite.

¶ 14. We find that the circumstances here are strikingly similar to those in *Westcott v. Mikkelson*, 148 Wis. 2d 239, 434 N.W.2d 822 (Ct. App. 1988). There, the mother, Karla Westcott, brought a claim of negligent infliction of emotional distress against an attending physician for injuries related to the delivery of her son, who was asphyxiated by the umbilical cord that had wrapped around his neck, resulting in stillbirth. The court of appeals concluded that Westcott was not a witness or observer of the cause of the emotional distress, but instead a participant. The court said that in determining whether Westcott "is an observer or a participant, it is difficult to imagine a more clear-cut example of the latter than a mother giving birth to a child in distress." *Id.* at 242.

■

¶ 15. The same conclusion applies here. It is difficult to imagine that Bonnie Pierce was anything other than a participant, directly involved in the tortious activity that resulted in the stillbirth of Brianna. Ac-

92

cordingly, she can maintain a direct claim for injuries that resulted from that activity. Wisconsin Stat. § 655.007 contemplates such a result, namely, that a patient who has suffered medical malpractice can bring a direct claim. The fact that the same patient may also have a derivative claim for wrongful death is unusual, and likely to arise only in the unique circumstances presented in cases like this where the patient is also a victim/participant in the events at issue.[5]

¶ 16. The court of appeals concluded that *Bowen* effectively overruled *Westcott. Pierce v. Physicians Ins. Co. of Wis., Inc.*, No. 01–2710, unpublished slip op., ¶ 24 n.6 (Wis. Ct. App. Nov. 11, 2003). We disagree. *Westcott* followed *Garrett v. City of New Berlin*, 122 Wis. 2d 223, 362 N.W.2d 137 (1985), where Connie Garrett pursued a claim for emotional distress based upon a police officer running over her brother with a police car. The officer had been pursuing a group of children, including the two of them, at an outdoor theater. We concluded that "Connie Garrett was not merely an observer who was not directly involved in the tortious activity. She was an object of the police officer's activities since she was a member of the group of children he was pursuing." *Id.* at 232. In *Garrett*, we also distinguished the circumstances there from the situation in *Waube v. Warrington*, 216 Wis. 603, 258 N.W. 497 (1935), where the court refused to recognize a claim for negligent infliction of emotional distress for a mother who witnessed the automobile accident that killed her child. The mother was not in peril herself. *See Westcott*, 148 Wis. 2d at 241.

---

[5] It is noteworthy that the damages caps in Wis. Stats. §§ 893.55(4) and 895.04(4) also segregate damages recoverable directly and derivatively.

¶ 17. Consequently, when *Bowen* rejected *Waube's* "zone of danger" rule, it did not, as the court of appeals concluded, undermine *Westcott*. We continue to recognize a claim for negligent infliction of emotional distress where the claimant is directly involved in the tortious activity. *Bowen* did nothing to change this.

¶ 18. Other courts have adopted a similar approach where the tortious activity results in the stillbirth of a child and have allowed both a derivative claim for wrongful death and a direct claim for negligent infliction of emotional distress. For example, in *Vaillancourt v. Medical Center Hospital of Vermont, Inc.*, 425 A.2d 92 (Vt. 1980), the Vermont Supreme Court allowed recovery for both the wrongful death of the viable fetus and the emotional distress of the mother. *Id.* at 143. In *Johnson v. Ruark Obstetrics and Gynecology Associates*, 395 S.E.2d 85 (N.C. 1990), the North Carolina Supreme Court also recognized a claim for negligent infliction of emotional distress related to the inadequate prenatal care, which allegedly caused the stillbirth of a child, in addition to allowing recovery for a wrongful death claim.

¶ 19. Here, the circuit court erred in determining that Bonnie Pierce "may not seek relief for the emotional distress associated with the injuries and death of her stillborn infant," but could only "seek relief for emotional distress connected to her own injuries." The circuit court came to that conclusion based upon an interpretation of our decision in *Kwaterski*, that a "mother's injuries do not include the injury to or death of a child as part of her own injuries."

¶ 20. Just as *Bowen* and *Finnegan* are not applicable, neither is *Kwaterski*. *Kwaterski* presented the "narrow issue" of "whether an eighth-month, viable unborn child, whose later stillbirth is caused by the

wrongful act of another, is 'a person' within the meaning" of the wrongful death statute (then Wis. Stat. § 331.03; now Wis. Stat. § 895.03). *Kwaterski,* 34 Wis. 2d at 15. At the time this court decided *Kwaterski,* in 1967, only a handful of states allowed wrongful death recovery for a stillborn infant. *Id.* at 18–19. Twenty-eight years later:

> The overwhelming majority of states now permit some form of recovery for the loss of a fetus. For example, approximately ten states and the District of Columbia recognize a common law cause of action for mental anguish suffered as a result of the loss of a fetus. In addition, approximately thirty-six states and the District of Columbia recognize a wrongful death cause of action for the loss of a viable fetus. Most of these states characterize a viable fetus as a "person" or "minor child" under their wrongful death statutes.

*Krishnan v. Sepulveda,* 916 S.W.2d 478, 480–81 (Tex. 1995) (footnotes omitted).

¶ 21. The passage in *Kwaterski* that the circuit court relied upon, that "we know of no court that has permitted a plaintiff mother to include injury to or death of a child as part of her injuries," was the explanation for this court's rejection of other courts' reasoning denying wrongful death recovery for a stillborn infant on the basis that "[s]ince the child is part of the mother, the wrong will be remedied if the mother sues and recovers for her injuries." *Kwaterski,* 34 Wis. 2d at 22. It did not, contrary to the circuit court's conclusion, foreclose a claim for emotional injuries sustained by the mother as a result of the stillbirth. Moreover, as noted above, a number of states since *Kwaterski* have allowed the plaintiff mother to recover, including recovery for negligent infliction of emotional

distress. *See, e.g., Vaillancourt*, 425 A.2d 92; *Johnson*, 395 S.E.2d 85; *see also Krishnan*, 916 S.W.2d at 480 n.2.

¶ 22. Instead of restricting the remedy for a stillbirth to the mother's claim for her own injuries, we concluded in *Kwaterski* that a wrongful death remedy would ameliorate likely "incongruous results":

> If no right of action is allowed, there is a wrong inflicted for which there is no remedy. Denying a right of action for negligent acts which produce a stillbirth leads to some very incongruous results. For example, a doctor or a midwife whose negligent acts in delivering a baby produced the baby's death would be legally immune from a lawsuit. However, if they badly injured the child they would be exposed to liability. Such a legal rule would produce the absurd result that an unborn child who was badly injured by the tortious acts of another, but who was born alive, could recover while an unborn child, who was more severely injured and died as the result of the tortious acts of another, could recover nothing.

*Kwaterski*, 34 Wis. 2d at 20.

¶ 23. It would be equally incongruous here to do the reverse—deny recovery to the injured mother because of a stillbirth merely because there is recovery via a wrongful death claim. The wrongful death claim does not and cannot compensate the mother for the pain and anguish that she suffered associated with the stillbirth of her child, resulting from the conceded medical malpractice. The wrongful death claim is intended to compensate the surviving parent for funeral expenses and especially for the loss of society and companionship caused by the child's death. "It does not include . . . the grief and mental suffering caused by the child's death." Wis JI—Civil 1895 (2001).

¶ 24. *Kwaterski* settled the issue of whether Wisconsin would follow the nascent national trend of allowing a wrongful death claim for a stillborn infant. It provides no guidance as to whether the mother is entitled to recover for her emotional distress as a result of medical malpractice that caused the stillbirth. The circuit court erred in relying on *Kwaterski* to dismiss Pierce's emotional distress claim related to the stillborn child, and the court of appeals erred in applying *Bowen* and *Finnegan*.

## III

¶ 25. The circuit court's reliance on *Kwaterski* to segregate Bonnie Pierce's "own injuries" from those "arising from the injuries and stillbirth of her daughter . . . " (*see* circuit court's August 20, 2001 Order), led this court to ask the parties to brief and argue, in addition to the appropriateness of that court's reliance on *Kwaterski*, the appropriateness of compartmentalizing the suffering, including emotional distress, here.

¶ 26. We are satisfied that, as we reiterated recently in *Mullen v. Walczak*, 2003 WI 75, 262 Wis. 2d 708, 664 N.W.2d 76, in discussing *Redepenning v. Dore*, 56 Wis. 2d 129, 143, 201 N.W.2d 580 (1972), it may be impossible to segregate injuries for emotional distress that stem from different sources:

> In *Redepenning*, a mother sought recovery for injuries she sustained in an automobile accident. Her daughter died in the accident, and the mother's claims included one for emotional distress. In upholding a jury's damage award, we determined that the mother's emotional distress was caused *both* by her own physical injuries as well as witnessing her daughter's death. Ultimately, we concluded that it was impossible to adequately separate the two.

*Mullen*, 262 Wis. 2d 708, ¶ 23 (emphasis in original) (citation omitted).

¶ 27. Similarly, we cannot separate the damages Pierce suffered into what could be described as "her own" from those she suffered in experiencing the stillbirth of her daughter. She experienced labor, the death of an infant inside of her, and the vacuum extraction of her dead child. To segregate her emotional injuries would be an even more Herculean task than in *Redepenning*. Pierce was not a witness, but rather a participant as a patient. The inextricable nature of Pierce's position as participant/patient relates to the source of her emotional injuries, so that it is indeed impossible for them to be compartmentalized. Accordingly, we conclude that the circuit court erred in separating Pierce's negligent infliction of emotional distress claim, and dismissing that part of her claim "arising from the injuries and stillbirth of her daughter . . ." while allowing Pierce to proceed on "her claim for damages for emotional distress due to her own injuries."

¶ 28. The fact that the sources of Pierce's emotional injuries cannot be segregated does not mean that we have here a single claim of medical malpractice subject to the single cap for noneconomic damages we discussed last term in *Maurin v. Hall*, 2004 WI 100, 274 Wis. 2d 28, 682 N.W.2d 866. In *Maurin*, there was a single victim of medical malpractice, the child. *Id.*, ¶¶ 9–13. Here, in contrast, there are two patients and two victims, Pierce and her stillborn daughter, Brianna. To apply a single cap here would effectively excuse the medical malpractice inflicted on one of the patient/participant/victims.

98

■

¶ 29. Finally, we asked the parties to brief and argue whether the stipulation they entered into concerning dismissal of claims resulted in Pierce's waiver of her claim for negligent infliction of emotional distress. We find that there is no such waiver.

¶ 30. The parties entered into a stipulation which provided that all causes of action set forth in the plaintiff's amended complaint may be dismissed "with the exception of the cause of action which was dismissed by the court by order dated August 20, 2001 . . . with prejudice and without costs to any party based upon the Stipulation attached hereto as Exhibit A." This resulted in a dismissal order of the circuit court, dated October 3, 2001, which excepted the claims or "causes of action that were dismissed by the court pursuant to the court's order of August 20, 2001. . . ." Exhibit A is the stipulation agreeing to liability and settling the wrongful death claim involving loss of society and companionship and funeral expenses and gravesite marker.

■

¶ 31. Stipulations are contractual in nature. *Duhame v. Duhame*, 154 Wis. 2d 258, 264, 453 N.W.2d 149 (Ct. App. 1989). We have held that interpretation of a stipulation must, above all, give effect to the intention of the parties. *D'Angelo v. Cornell Paperboard Prods. Co.*, 33 Wis. 2d 218, 227, 147 N.W.2d 321 (1967). In *Milwaukee & Suburban Transport Corp. v. Milwaukee County*, 82 Wis. 2d 420, 263 N.W.2d 503 (1978), this court held:

> Stipulations should be construed consistent with the apparent intention of the parties, the spirit of justice,

> and the furtherance of fair trials upon the merits, and should not be construed technically so as to defeat the purposes for which they were made. In seeking the intent of the parties, the language of the stipulation should not be construed so as to effect the waiver of a right not plainly intended to be relinquished.

*Id.* at 442 (citations omitted).

¶ 32. The modifying language that the dismissal is "based upon the Stipulation attached hereto as Exhibit A" strongly suggests that the dismissal of claims was based upon the settling of the wrongful death claim, and that the parties intended the dismissal of only that claim. While the parties' intent of what, if anything, was to be dismissed, in addition to the wrongful death claim, and what causes of action were to be preserved, is not entirely clear from the face of the stipulation, it becomes much clearer when the procedural circumstances are reviewed.

¶ 33. As we concluded above, the circuit court erred in compartmentalizing Pierce's negligent infliction of emotional distress claim and separating it into two claims, one for "her . . . own injuries," and another "arising from the injuries and stillbirth" of Brianna. Pierce did not agree that the circuit court correctly characterized her personal injury claim that encompassed her emotional distress claim, and appealed that decision to the court of appeals. Her appeal of the circuit court decision and order leads us to conclude that she did not intend to stipulate to dismiss the entire claim that was the basis of that appeal—her claim which involved the negligent infliction of emotional distress. We are satisfied that Pierce did not, by entering into the stipulation for dismissal, waive her emotional distress claim, or any portion thereof. That

100

stipulation clearly was intended to preserve the claim dismissed by the circuit court order of August 20, 2001.

## V

¶ 34. For the reasons set forth, Bonnie Pierce may pursue her entire claim for the negligent infliction of emotional distress, including that portion arising from the injuries and stillbirth of her daughter, Brianna. In these unusual circumstances, we conclude that the mother may recover as a parent, for the wrongful death of the stillborn infant; and as a patient, for her personal injuries including the negligent infliction of emotional distress. We also conclude the stipulation of the parties did not waive this claim. Accordingly, we reverse the decision of the court of appeals that affirmed the circuit court's order, which dismissed that portion of the mother's personal injury claim for negligent infliction of emotional distress arising from the injuries and still-birth of her daughter.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded.

¶ 35. LOUIS B. BUTLER, JR., J., did not participate.

¶ 36. DAVID T. PROSSER, J. (*concurring*). In Wisconsin, medical malpractice is a distinct area of tort law whose principles are dictated, in large part, by detailed provisions of the Wisconsin Statutes. One of the most critical of these statutes is Wis. Stat. § 655.007 entitled "Patients' claims." It provides: "On and after July 24, 1975, any patient or the patient's representative having a claim *or* any spouse, parent, minor sibling or child of the patient having a derivative claim for injury or death on account of malpractice is subject to this chapter." (Emphasis added.)

101

¶ 37. This statute governs claims "for injury or death on account of malpractice," including *direct* claims by a patient or a patient's representative and *derivative* claims by specified family members.

¶ 38. The facts in this case are different and distinguishable from the facts in *Maurin v. Hall,* 2004 WI 100, 274 Wis. 2d 28, 682 N.W.2d 866, and *Finnegan v. Wisconsin Patients Compensation Fund,* 2003 WI 98, 263 Wis. 2d 574, 666 N.W.2d 797, because the family members in *Maurin* and *Finnegan* had only *derivative* claims. All three cases involve medical malpractice and the death of a minor child. All three cases involve a legitimate wrongful death claim. But only this case involves *direct* medical malpractice against two patients, a mother and a child. The mother's claim for negligent infliction of emotional distress must be rationalized and analyzed as a direct claim, not a derivative claim, in order to be separate and to comply with Wis. Stat. § 655.007.

¶ 39. Insofar as the wrongful death claim is concerned, this court ruled in 1967 that an eighth-month, viable unborn child whose later stillbirth is caused by the wrongful act of another is a "person" within the meaning of the wrongful death statute. *Kwaterski v. State Farm Mut. Automobile Ins. Co.,* 34 Wis. 2d 14, 148 N.W.2d 107 (1967). This rule, that a viable unborn child is a "person" under the wrongful death statute, is not here in dispute.[1]

¶ 40. That a mother may bring a claim for negligent infliction of emotional injuries sustained during the delivery of her child, *in addition to a claim for*

---

[1] The principle that an unborn child is a separate entity whose interests are protected is reflected in a number of Wisconsin statutes. *See* the statutes listed in Wis. Stat. § 939.75(3).

*wrongful death,* was decided in *Westcott v. Mikkelson,* 148 Wis. 2d 239, 434 N.W.2d 822 (Ct. App. 1988).

¶ 41. One puzzle in this case is whether this court's subsequent decision in the case of *Bowen v. Lumbermens Mutual Casualty Co.,* 183 Wis. 2d 627, 517 N.W.2d 432 (1994), limited claims for the negligent infliction of emotional distress to "bystander" claims. Clearly, the answer is "no." Sharon Bowen was a "bystander," a plaintiff who alleged emotional distress from viewing the immediate aftermath of a tortfeasor's negligent infliction of physical harm on a third person, her son. *Id.* at 631–32. In upholding her claim, the court did not repudiate *Westcott.* In fact, it stated that a bystander situation was not the only circumstance that could give rise to a claim for negligent infliction of emotional distress. *Id.* at 631, 632–33.

¶ 42. The majority opinion determines that Bonnie Pierce has a separate direct claim for negligent infliction of emotional distress, but it does not delineate what she must prove, as a matter of law, to recover on this claim. The court has not said before and the court does not say now what elements must be present for the tort of "negligent infliction of emotional distress" when the claim is *not* a bystander claim. In addressing this question, the central problem is "the difficulty in setting limits on recovery for this common, but intangible, category of harm." Terrence F. Kiely, *Modern Tort Liability: Recovery in the '90s* 109 (1990).

¶ 43. Wisconsin Jury Instruction—Civil 2725 sets out the elements of *Intentional* Infliction of Emotional Distress. The instruction reads in part:

> A person may recover damages for the intentional infliction of severe emotional distress upon him or her by another.

103

A person who by extreme and outrageous conduct intentionally causes emotional distress to another is liable to that person if the resulting emotional distress is severe.

Four factors must be established for an injured person to recover:

1. That the conduct was intended to cause emotional distress,

2. That the conduct was extreme and outrageous,

3. That the conduct was a cause of the person's emotional distress, and

4. That the emotional distress was extreme and disabling.

. . . .

For a person's emotional response to be extreme and disabling, you must find that the person was unable to function in other relationships because of the emotional distress caused by the conduct. Temporary discomfort is not extreme and disabling and cannot be the basis of recovery.

Wis JI—Civil 2725.

¶ 44. It goes without saying that this case does not involve "extreme and outrageous" conduct or an "intention" to cause emotional distress. However, the plaintiff did allege in her complaint that she "suffered severe emotional distress and injury" and that she "sustained physical injury." She did not allege that she "was unable to function in other relationships because of the intentional distress caused by the" defendant's medical negligence.

104

¶ 45. Wisconsin Jury Instruction—Civil 1510 sets out the elements of *Negligent* Infliction of Severe Emotional Distress (Bystander Claim). This instruction is based on *Bowen's* explicit delineation of elements:

> First, the injury suffered by the victim must have been fatal or severe. Second, the victim and the plaintiff must be related as spouses, parent-child, grandparent-grandchild or siblings. Third, the plaintiff must have observed an extraordinary event, namely the incident and injury or the scene soon after the incident with the injured victim at the scene.

*Bowen,* 183 Wis. 2d at 633.

¶ 46. The *Bowen* court also stated that "borrowing concepts from the tort of intentional infliction of emotional distress," a plaintiff must prove "severe emotional distress; but the plaintiff need not prove physical manifestation of that distress." *Id.* at 632. The resulting jury instruction explains:

> Emotional distress may arise from the natural shock and grief of directly observing an (incident) which results in the (death) to a family member . . . . Emotional distress includes mental suffering, anguish, and shock. It can include fright, horror, grief, and worry. It need not include physical manifestations of injury, although these may also be present.
>
> In order for (plaintiff) to recover, however, (her) emotional distress must be severe. This means it must be more than temporary discomfort or a minor psychic or emotional shock. It must be an extreme emotional response.

Wis JI—Civil 1510.

¶ 47. The *Bowen* court opined that claimants and courts:

need a framework for evaluating a bystander's claims of negligent infliction of emotional distress. . . .

We conclude that the traditional elements of a tort action in negligence—negligent conduct, causation and injury (here severe emotional distress)—should serve as the framework for evaluating a bystander's claim of negligent infliction of emotional distress.

*Bowen,* 183 Wis. 2d at 652–53.

¶ 48. If this same framework is also applied to *direct* claims such as the present case, we have a formula of: (1) negligent conduct (namely, medical malpractice); (2) causation; and (3) injury (severe emotional distress), without any need for either physical injury or "physical manifestations" of emotional injury. Such a formulation requires comment.

¶ 49. First, the plain truth is that "the physical manifestations" of emotional injury were viewed as an "essential requirement of this type of claim" in *Westcott.* 148 Wis. 2d at 242 n.2.[2] In presenting the case to the court of appeals, Karla Westcott's attorney, Jerome Maeder, stated in his brief:

What Karla Westcott observed during the last minutes of the birthing process and the shock of then observing and feeling the issuance of her dead child caused her mental illness.

---

[2] Other jurisdictions are divided on the question of whether the plaintiff must suffer some physical injury or physical manifestation of an emotional injury to successfully prosecute tort claims for emotional injuries. *Compare, e.g., St. Charles v. Kender,* 646 N.E.2d 411, 414 (Mass. App. Ct. 1995) (physical injury required) *and Sceusa v. Mastor,* 525 N.Y.S.2d 101, 102 (N.Y. App. Div. 1988) (same) *with Giardina v. Bennett,* 545 A.2d 139, 140, 142–43 (N.J. 1988) (physical injury not required) *and Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.,* 395 S.E.2d 85, 97 (N.C. 1990) (same).

. . . .

Karla Westcott was in prior good physical and mental health before this but as a result of witnessing her own child's strangulation she has been severely psychiatrically damaged. She now goes from one major depression to another and has had over 200 contacts with the Health Care Center since the birth of her child, frequently attempting suicide or idealizing such thoughts. She has been on various medications, has experienced insomnia, and then episodes where she has not been able to get up out of her sleep. Her personality has changed and today she still periodically experiences a frightening and overwhelming episode of having her unborn child kicking her inside so that she actually feels the child kicking within her.

She has been treated at the Health Care Center as an inpatient and has seen other psychiatrists. She was evaluated by Dr. Bruce Rhoades, the clinical head of the North Central Health Institute, and his affidavit has been filed with this court. This affidavit and the affidavit of Karla Westcott shows that *she has many physical manifestations of her psychiatric problem* and that the diagnosis is not one of "grief" as is implied by the respondents but is an illness readily perceived and categorized by psychiatry and directly resulting from the negligent conduct of the defendant doctor.

She has a "post traumatic stress disorder" together with "major depressive disorder" and "dysthymic disorder" (*Diagnostic and Statistical Manual of Mental Disorders III and IIIR*). (Emphasis added).

¶ 50. This powerful representation was paralleled in *Bowen,* where the court stated: "The complaint asserts that these experiences caused Sharon Bowen extreme emotional and psychic injuries *with accompanying physical symptoms* including hysteria, insomnia,

nausea and the disruption of work and family relationships." *Bowen,* 183 Wis. 2d at 635 (emphasis added).

¶ 51. Thus, in a very real sense, the presence of *physical symptoms* of emotional distress in Bowen's claim meant that the court's blunt disavowal of any *requirement* for physical injury or physical manifestation of emotional distress was not necessary to its decision.

¶ 52. If there is no *requirement* of physical manifestation of emotional distress, the concerns expressed by Justice Wilcox in *Bowen* about assuring the validity of claims for emotional distress become more urgent. *See Bowen,* 183 Wis. 2d at 663 (Wilcox, J., concurring). He asserted that claimants should be required to produce "some extrinsic, verifiable evidence to support their claims." *Id.* at 664.

¶ 53. At the very least, a fact-finder reviewing the merits of a claim for negligent infliction of emotional distress should be permitted to consider the presence or absence of physical injury or physical manifestations of distress.[3] In a legitimate claim, the absence of any physical manifestations of distress may be explained by expert testimony, which would be helpful, in any event, in describing and categorizing the patient's mental health.

¶ 54. Second, there should be little dispute that the stillbirth of a child as a result of medical negligence will be deeply hurtful to the mother, producing extraor-

---

[3] Other courts have struggled to find tests to discern the legitimacy of a plaintiff's claim for emotional distress in the absence of physical injury. The Nebraska Supreme Court requires the plaintiff to show that the emotional distress was "medically diagnosable and . . . of sufficient severity that it is medically significant." *Hamilton v. Nestor,* 659 N.W.2d 321, 329 (Neb. 2003).

dinary grief and anguish. Nonetheless, I do not understand the court's decision to approve a claim for negligent infliction of emotional distress in *every* such case. A claimant will necessarily be required to meet some threshold of proof for emotional injury, and I do not see why the burden of proving severe emotional distress should be less in a negligence case than in an intentional tort.

¶ 55. Third, severe emotional distress should not, at least in this case, encompass the mother's loss of society and companionship of her child. Loss of "companionship, society and the like . . . are usually viewed as something distinct from anguish or grief." Dan B. Dobbs, 2 *The Law of Torts* 812 (2001). Wisconsin's present wrongful death statute authorizes up to $500,000 for "loss of society and companionship," for the death of a child from medical malpractice or other tortious causes. Wis. Stat. § 895.04(4). A mother seeking damages for negligent infliction of emotional distress from medical malpractice is making a separate claim governed by the cap under Wis. Stat. § 893.55(4)(d). The two claims may be stacked but they must not be permitted to overlap. Courts "can and should preclude double recovery by an individual." *EEOC v. Waffle House,* 534 U.S. 279, 297 (2002).[4] Here

---

[4] As another court summarized the difficulty,

> The major issue with which [courts considering emotional distress arising from a miscarriage or stillbirth] have wrestled is defining the kinds of damages that are allowable in the mother's action so as neither to *duplicate* damages afforded in a wrongful death action nor to permit damages that, under the State's law, clearly are *not* allowed, even in a wrongful death action. The demarcation lines drawn by the courts are not always consistent and they are not always clearly articulated.

*Smith v. Borello,* 804 A.2d 1151, 1159 (Md. 2002).

the plaintiff has already settled for an award under the wrongful death statute. The specific injury compensated under the wrongful death statute may not be compensated again through a tort claim for negligent infliction of emotional distress.

¶ 56. These observations about the requisite elements for negligent infliction of emotional distress are not exhaustive. Circuit courts may develop other criteria for claims and may in some cases invoke familiar public policy limitations on liability. *See, e.g., Smaxwell v. Bayard,* 2004 WI 101, ¶¶ 33, 40, 274 Wis. 2d 278, 682 N.W.2d 923.

¶ 57. For the foregoing reasons, I respectfully concur.

¶ 58. I am authorized to state that Justice JON P. WILCOX joins this concurrence.