Steven CAMP, by his Guardian ad Litem, James
Peterson, Ma-Retta Camp and Richard Kimball,
Plaintiffs-Appellants,

v.

Harry ANDERSON, Brenda Anderson
and State Auto Insurance Company,
Defendants-Respondents.

Court of Appeals

*No. 2005AP2407. Submitted on briefs May 15, 2006.
—Decided July 25, 2006.*

2006 WI App 170

(Also reported in 721 N.W.2d 146.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William D. Harper, Paul D. Peterson* and *Lori L. Burgan* of *Harper & Peterson, P.L.L.C.*, Woodbury, MN.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Kyle H. Torvinen* and *Parrish J. Jones* of *Knudson, Gee, Torvinen & Watson, S.C.*, Superior.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Steven Camp, Ma-Retta Camp and Richard Kimball (collectively, the Camps) appeal a judgment dismissing their claims against Harry and Brenda Anderson and their insurer, State Auto Insurance Company. The Camps argue the circuit court erred by: (1) not allowing them to amend their complaint to add a claim for negligent infliction of emotional distress against Brenda's son, Anthony Machones; (2) dismissing their claim for negligent supervision of Anthony against the Andersons; and (3) not allowing them access to Anthony's juvenile records.

¶ 2. We conclude the circuit court erred as a matter of law when it concluded that a claim for negligent infliction of emotional distress is not an actionable tort in Wisconsin, thereby foreclosing the Camps from amending their complaint. We therefore reverse that portion of the judgment and remand with directions to determine whether, under the correct legal standard, the Camps have stated an actionable claim for negligent infliction of emotional distress. Because the Camps' remaining arguments assume the viability of their negligent infliction of emotional distress claim and because the circuit court's rulings on those arguments were also predicated on its erroneous conclusion that negligent infliction was not an actionable claim, we also reverse and remand those issues.

## BACKGROUND

¶ 3. On July 17, 2000, thirteen-year-old Anthony and four-year-old Steven were playing in the Camps' yard with Steven's dog.[1] An eyewitness who had a view

---

[1] The parties generally dispute the facts of the case, and their statements of facts present vastly different pictures of the events leading up to and following the incident on July 17, 2000.

of the Camps' yard stated he saw a "white thing flying through the air and landing in some tall grass." The "white thing" was Steven's dog. The eyewitness saw Anthony pull some tall reeds or cattails out of the ground, shove them at the dog, and chase Steven with the cattails with what appeared to be feces on the end. The eyewitness later saw Anthony jump and land with both feet on the dog. The dog was severely injured and was later euthanized.

¶ 4. Anthony was charged in juvenile court with delinquency based on cruelty to animals. A court-appointed psychologist diagnosed Anthony with a form of autism known as Asperger's Disorder. The psychologist determined Anthony was unable to appreciate the wrongfulness of his conduct or to conform his conduct with the requirements of the law. Based on the psychologist's evaluation, the juvenile charges were dismissed.

¶ 5. The Camps commenced this action in January 2002. They alleged claims for intentional infliction of emotional distress against Anthony and negligent supervision against the Andersons, seeking damages for, among other things, emotional distress and property loss. The Andersons moved for partial summary judgment on the intentional infliction of emotional distress claim because, based on the court-appointed psychologist's opinion in the juvenile case, Anthony could not have formed the requisite intent to support the claim. The intentional infliction claim was eventually dismissed by stipulation.

However, the Andersons argue that, even construing the facts most favorably to the Camps, the Camps' claims must fail as a matter of law. Accordingly, the facts of this background section follow those presented by the Camps.

¶ 6. Beginning in April 2003, the Camps unsuccessfully attempted to obtain access to Anthony's juvenile records. In April 2004, the Camps moved to compel discovery of Anthony's records and to amend their complaint to add a claim for negligent infliction of emotional distress against Anthony. The circuit court denied the Camps' motion to amend their complaint because it concluded direct claims for negligent infliction, as opposed to bystander claims, were not allowed under Wisconsin law. The court also denied the Camps' motion to compel discovery because there were no claims against Anthony.

¶ 7. In June 2004, the Andersons moved for summary judgment on the negligent supervision claim or, in the alternative, to limit the damages for that claim to property loss. In August, the Camps moved the court to vacate or modify its previous decision denying their motion to amend the complaint. The circuit court addressed both motions in a September 2004 decision. The court denied the Camps' motion, but did not grant the Andersons' summary judgment motion in its entirety. Instead, the court agreed with the Andersons' alternative argument that the only damages available were for property damage for loss of the Camps' dog.

¶ 8. After unsuccessfully petitioning this court for leave to proceed with an interlocutory appeal, the Camps again moved the circuit court to reconsider its decision regarding their negligent infliction of emotional distress claim. The circuit court again denied the Camps' motion. The parties then entered into a settlement agreement regarding property loss damages. The Camps reserved their right to appeal the circuit court's decisions regarding their negligent infliction of emotional distress claim and the availability of emotional

distress damages on their negligent supervision claim. Final judgment was entered on June 23, 2005.

## DISCUSSION

¶ 9. The Camps argue the circuit court erred as a matter of law when it concluded that Wisconsin does not allow a claim for negligent infliction of emotional distress. The Camps primarily contend that the holding of *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), demonstrates that Wisconsin recognizes an independent tort for negligent infliction of emotional distress for a participant in an incident.[2] The Andersons, on the other hand, argue that *Bowen* only recognizes bystander claims for negligent infliction of emotional distress.

¶ 10. In *Bowen*, Steven Bowen, a child, died after his bicycle collided with a vehicle. *Id.* at 634. Steven's mother, Sharon, witnessed the immediate aftermath of the accident. *Id.* at 634–35. Two claims of negligent infliction of emotional distress were pled: one by

---

[2] The Camps also rely on Wis JI—Civil 1770 (2006), a damages instruction that cites *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), as authority. That jury instruction states:

> (Plaintiff) claims that (he) (she) suffered severe emotional distress (in addition to the physical injuries (he) (she) sustained) as a result of the (accident) (incident) in question.

> If you are satisfied that (plaintiff) suffered severe emotional distress and that the (accident) (incident) was a substantial factor in producing it, you should include in your award a fair and reasonable allowance for the severe emotional distress. If you are not satisfied, make no allowance for the severe emotional distress and confine your award to fair and reasonable compensation only for any other damages (resulting from personal injuries) to (plaintiff) which were caused by the (accident) (incident).

719

Sharon for witnessing her son's fatal accident and one by Steven's estate for the emotional distress he suffered by being aware of the imminent collision. *Id.* at 635. The *Bowen* court labeled Sharon's claim as that of a "bystander," meaning "a plaintiff who alleges emotional distress arising from a tortfeasor's negligent infliction of physical harm on a third person." *Id.* at 632.

¶ 11. The *Bowen* court undertook an exhaustive review of emotional distress jurisprudence. It noted that:

> Historically this court and other courts have been reluctant to compensate plaintiffs for emotional suffering. While courts are willing to compensate for emotional harm incident to physical injury in a traditional tort action, they have been loath to recognize the right to recover for emotional harm alone. . . . .
>
> . . . Courts have historically been apprehensive that psychological injuries would be easy to feign and that suits would be brought for trivial emotional distress more dependent on the peculiar emotional sensitivities of the plaintiff than upon the nature of the tortfeasor's conduct. People should not, courts reasoned, be able to sue for everyday minor disturbances. Furthermore courts feared that opening the courts to claims for negligent infliction of emotional distress would open the floodgates of litigation and lead to unlimited liability for a negligent tortfeasor.
>
> Nevertheless courts have acknowledged that justice requires recognition of some claims for negligently inflicted emotional harm. Courts have devised various criteria to balance a plaintiff's compensatory interests for emotional distress with the interests of the judicial system in authenticating claims and preventing unlimited liability for the tortfeasor.

*Id.* at 638–40 (footnotes omitted).

720

¶ 12. The court reviewed and abandoned previous criteria utilized by Wisconsin courts to draw the line between actionable and non-actionable claims in bystander cases, such as the "impact," "zone of danger," and "fear of one's safety" rules. Instead, the court concluded "that the traditional elements of a tort action in negligence—negligent conduct, causation and injury (here severe emotional distress)"—combined with public policy considerations for limiting liability, "should serve as the framework for evaluating a bystander's claim of negligent infliction of emotional distress." *Id.* at 652–53.

¶ 13. After concluding Sharon's complaint adequately set forth the elements of a claim for negligent infliction of emotional distress, the court examined whether public policy considerations barred Sharon's claim. It concluded that because the facts were simple and the public policy issues fully presented in the pleadings, it could make a public policy determination without a trial. The public policy considerations examined included:

> (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point.

*Id.* at 655. In sum, "[w]hen it would shock the conscience of society to impose liability, the courts may hold as a matter of law that there is no liability." *Id.* at 656.

¶ 14. The court articulated three additional factors to consider as part of the public policy determination. The bystander must establish: (1) that the victim was seriously injured or killed; (2) that the bystander is related to the victim as spouse, parent, child, grandparent, grandchild or sibling; and (3) that the bystander witnessed the incident or its immediate aftermath. *Id.* at 656–58. The court concluded public policy did not bar Sharon's claim. *Id.* at 660.

¶ 15. The *Bowen* court then turned to the estate's claim for negligent infliction of emotional distress for Steven's fear and apprehension suffered directly before his death. *Id.* at 661. It concluded that the estate had stated a claim for negligent infliction by setting forth the elements of the tort. *Id.* at 662. However, it concluded that public policy barred recovery for Steven's emotional distress, noting that it was "mere speculation" that Steven suffered emotional distress and that allowing him to recover "would be too likely to open the way to fraudulent claims." *Id.*

¶ 16. Here, the circuit court concluded that *Bowen* limited the scope of negligent infliction of emotional distress claims to those asserted by bystanders. We do not read *Bowen* so narrowly. *Bowen* primarily involved Sharon's bystander claim. However, the *Bowen* court also acknowledged that negligent infliction of emotional distress claims could arise under a myriad of circumstances. *Id.* at 631. The court stated:

> We conclude that a plaintiff claiming negligent infliction of emotional distress, *regardless of the fact situation in which the claim arises,* must prove the following elements: (1) that the defendant's conduct fell below the applicable standard of care, (2) that the plaintiff suffered an injury, and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury. The

722

factfinder determines cause-in-fact. The court determines whether considerations of public policy relieve the defendant of liability in a particular case. These public policy considerations are an aspect of legal cause, not cause-in-fact.

*Id.* at 632 (emphasis added).

¶ 17. Indeed, *Bowen* examined a direct claim for negligent infliction of emotional distress: the claim asserted by Steven's estate. The court applied the tort elements to the estate's direct claim in the same manner as it did to the bystander claim. The court concluded the estate had stated a claim for negligent infliction. However, the court concluded public policy barred the claim. Thus, *Bowen* acknowledged a direct claim for negligent infliction of emotional distress, but rejected that particular claim on public policy grounds.

■

¶ 18. Our reading of *Bowen* is in accord with Wis JI—Civil 1511 (2006), which was not available at the time of the circuit court's decision in this case.[3] While pattern jury instructions are not precedential authority, we may give them due weight as persuasive authority. *Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 604, 541 N.W.2d 173 (Ct. App. 1995). That instruction provides, in part:

(Plaintiff) has alleged that (he) (she) sustained severe emotional distress as a result of the (accident) (inci-

---

[3] At the time of the circuit court's decision, there was an existing jury instruction, founded on the *Bowen* holding, delineating the elements of a bystander's claim for negligent infliction of emotional distress. *See* Wis JI—Civil 1510 (2006). The comment to that instruction has been amended to add the following: "For a direct claim based on negligent infliction of emotional distress, see Wis JI-Civil 1511."

dent) involved in this case [independent of (his) (her) claim of physical injuries] [in the absence of physical injuries.] Emotional distress is compensable with or without physical injuries if (defendant) was negligent with respect to the (accident) (incident) involved in the case, the (accident) (incident) caused the (plaintiff) emotional distress, and the emotional distress is severe. Therefore, there are three things that (plaintiff) must prove by the greater weight of the credible evidence to a reasonable certainty:

1. (defendant) was negligent with respect to the (accident) (incident) involved in the case;

2. the (accident) (incident) was a cause of (plaintiff)'s emotional distress; and

3. the emotional distress is severe.

In accordance with *Bowen*, the jury instruction provides an independent, direct claim for negligent infliction of emotional distress claim, patterned on the tort elements for negligence. We conclude a direct claim for negligent infliction of emotional distress is recognized in Wisconsin and therefore the circuit court erred by denying the Camps' motion to amend their complaint on that basis.[4]

[4] Both parties spend portions of their briefs discussing *Pierce v. Physicians Ins. Co.*, 2005 WI 14, 278 Wis. 2d 82, 692 N.W.2d 558, which was the basis for one of the Camps' motions to reconsider. *Pierce* was a medical malpractice action involving a stillbirth. *Pierce* examined "whether a mother who suffers the stillbirth of her infant as a result of medical malpractice has a personal injury claim involving negligent infliction of emotional distress . . . in addition to her derivative claim for wrongful death of the infant." *Id.*, ¶ 1. The *Pierce* court held that, under the "unusual circumstances" presented, the mother could recover both as mother and patient. *Id.*, ¶ 34. The *Pierce* holding was a narrow one, turning on the analysis of what claims were avail-

¶ 19. However, the Andersons also argue that a subsequent decision, *Rabideau v. City of Racine*, 2001 WI 57, 243 Wis. 2d 486, 627 N.W.2d 795, bars the Camps' negligent infliction of emotional distress claim. Thus, they contend, the circuit court properly determined the Camps had no claim for negligent infliction of emotional distress.

¶ 20. *Rabideau* examined claims for both intentional and negligent infliction of emotional distress in the context of a dog's death. In *Rabideau*, an off-duty police officer shot and killed Rabideau's dog in front of her. *Rabideau*, 243 Wis. 2d 486, ¶ 1. Rabideau claimed emotional distress from witnessing the shooting. In examining Rabideau's negligent infliction claim, the court concluded that Rabideau was not related to the victim as spouse, parent-child, grandparent-grandchild, or siblings and therefore could not satisfy the three public policy factors for a bystander claim articulated in *Bowen*. *Id.*, ¶¶ 23–24. The court also rejected Rabideau's argument that those relationships should be extended to include companion animals. *Id.*, ¶¶ 26–27. The *Rabideau* court concluded that, despite the strong bonds formed between humans and companion animals, Rabideau's dog was "property" under the law and public policy barred recovery for emotional distress caused by damage to property because allowing recovery would enter a field that had "no sensible or just stopping point." *Id.*, ¶ 31.

¶ 21. To the extent the Andersons argue that *Rabideau* bars recovery for the emotional distress

able in the context of a Wis. Stat. ch. 655 medical malpractice action. Indeed, *Pierce* rejected *Bowen* as being inapplicable. *Id.*, ¶¶ 13, 24. We conclude *Pierce* is inapplicable to the facts presented here.

Steven suffered as a result of witnessing the fatal injuring of his dog, we agree. *Rabideau* instructs that public policy bars recovery for the emotional distress of a bystander to an animal's death. However, *Rabideau* is not dispositive of the claim asserted by the Camps. The Camps claim Steven suffered emotional distress not as a bystander, but due to Anthony's directly threatening Steven with the feces-covered cattail. As discussed above, *Bowen* recognizes direct claims for negligent infliction of emotional distress, as long as a plaintiff's claim satisfies the elements of negligent conduct, causation and injury (severe emotional distress) and is not otherwise barred by public policy.

¶ 22. Despite our agreement with the Camps that a direct claim for negligent infliction of emotional distress is an actionable tort in Wisconsin, it does not automatically follow that the Camps may amend their complaint and pursue their claim. Because the circuit court erroneously concluded that no actionable tort for negligent infliction of emotional distress existed, the court made no findings regarding whether the Camps' proposed amendment stated a claim and whether, if a claim was sufficiently pled, public policy barred Steven's recovery or, indeed, whether a public policy determination was appropriate at that time. The parties also fail to address these questions in their appellate briefs.[5] Therefore, we reverse and remand for the circuit court to make the requisite findings under the correct legal standard.

---

[5] The parties spend significant portions of their appellate briefs discussing whether the Camps' negligent supervision claim is barred by public policy, but do not address the public policy implications of the Camps' direct claim for negligent infliction of emotional distress.

¶ 23. The circuit court's rulings that form the basis for the Camps' remaining arguments on appeal were also predicated on its erroneous conclusion that negligent infliction was not an actionable claim. Indeed, the Camps' remaining arguments on appeal are predicated on the viability of their negligent infliction of emotional distress claim. The Camps concede that they may only pursue their negligent supervision claim if they are able to amend their complaint to add the negligent infliction claim. *See Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 478, 329 N.W.2d 150 (1983). If neither claim is viable, the Camps' arguments that they are entitled to obtain Anthony's juvenile records are moot. Accordingly, if the circuit court ultimately concludes on remand that the negligent infliction of emotional distress claim is not sufficiently pled or is barred by public policy, there will be no need for a decision on the Camps' remaining arguments. However, if the circuit court concludes the Camps have a viable claim for negligent infliction of emotional distress, it may then rule on those arguments.

*By the Court.*—Judgment reversed and cause remanded with directions.